342 Pa. Superior Ct. 215 (1985)
492 A.2d 727
In re S.O.
Appeal of S.O.
In re R.T.
Appeal of R.T.
Supreme Court of Pennsylvania.
Argued July 19, 1984.
Filed May 10, 1985.
*219 Bradley Bridge, Assistant Public Defender, Philadelphia, for appellants.
Martha Gale, Philadelphia, for appellee.
Before CAVANAUGH, BECK and TAMILIA, JJ.
TAMILIA, Judge:
These appeals are companion cases presenting identical challenges to Philadelphia's implementation of procedures *220 statutorily mandated for involuntary civil commitments under 50 Pa.C.S.A. § 7305 of the Mental Health Procedures Act (hereinafter, the Act). Both appellants allege that the procedural deficiencies of this system resulted in, inter alia, the denial of their right to due process. We agree.
The background of these cases may be summarized as follows. Both S.O. and R.T. were originally committed under section 302[1] of the Act in August and September, *221 respectively, of 1983. Both appellants, after section 303[2] hearings, agreed to remain hospitalized. No formal testimony *222 *223 was taken at the hearings. In the case of S.O., no stipulation as to commitability was entered; R.T. conceded his dangerousness to self or others. No review was requested in either instance. At subsequent section 304[3] *224 *225 *226 hearings, testimony was taken as to the dangerous propensities of both appellants. S.O. was committed to a further stay not to exceed 30 days and R.T. to a further 60 days on in-patient status. Again, no review was requested of either commitment order.
The results of section 305[4] hearings, commitment of S.O. for a period not to exceed 90 days and of R.T. for another *227 60 days, prompted petitions for review, which being denied led to the instant appeals. Of the issues before us, the first three, presenting instances of allegedly defective implementation of procedures essential to constitutional administration of the Act, are meritorious and require relief.
We note initially that although the commitment periods authorized by the section 305 hearings in question have long since expired,[5] a live controversy still exists since involuntary commitment orders involve important liberty interests over which it behooves us to maintain appellate vigilance. In re Remley, 324 Pa.Super. 163, 471 A.2d 514 (1984); In re Condry, 304 Pa.Super. 131, 450 A.2d 136 (1982); Commonwealth ex rel. Bielat v. Bielat, 257 Pa.Super. 446, 390 A.2d 1321 (1978).
It is first alleged that appellants' right to due process was abridged in that the terms of the Act were violated by the court's pro forma and belated review of the section 305 commitment hearings before the Mental Health Review Officer (hereinafter, MHRO). This conclusion (which encompasses two issues in appellants' briefs) is premised on the applicability to such proceedings of section 109(b) of the Act.
50 Pa.S.A. § 7109 reads as follows:
§ 7109. Mental health review officer
(a) Legal proceedings concerning extended involuntary emergency treatment under section 303(c), court-ordered involuntary treatment under sections 304 and 305 or transfer hearings under section 306, may be conducted by a judge of the court of common pleas or by a mental health review officer authorized by the court to conduct the proceedings. Mental health review officers shall be *228 members of the bar of the Supreme Court of Pennsylvania, without restriction as to the county of their residence and where possible should be familiar with the field of mental health. Law-trained municipal court judges may be appointed mental health review officers.
(b) In all cases in which the hearing is conducted by a mental health review officer, a person made subject to treatment shall have the right to petition the court of common pleas for review of the certification. A hearing shall be held within 72 hours after the petition is filed unless a continuance is requested by the person's counsel. The hearing shall include a review of the certification and such evidence as the court may receive or require. If the court determines that further involuntary treatment is necessary and that the procedures prescribed by this act have been followed, it shall deny the petition. Otherwise, the person shall be discharged.
(c) Notwithstanding any other provision of this Act, no judge or mental health review officer shall specify to the treatment team the adoption of any treatment technique, modality, or drug therapy. (emphasis added)
The review hearings on S.O.'s and R.T.'s petitions were held 52 and 36 days respectively after the petitions were lodged. No testimony was presented, no argument or additional evidence was allowed and there was no review of actual testimony below.
Appellee would ignore section 109 altogether, arguing that because the review procedure is reiterated in section 303(g), its exclusion from section 305 signifies its inapplicability to that provision. Operating on the expressio unius est exclusio alterius theory, the court below found that because the language of section 109 is not reiterated in (inter alia) section 305, its conditions were, therefore, not legislatively intended to involve section 305. A review of the entire act shows clearly the legislative plan in which Article I, General Provisions, relates clearly to the subsequent articles, each of which addresses itself to logically *229 delineated classes of procedures; Article II, Voluntary examination and treatment, Article III, Involuntary examination and treatment, Article IV, Determination affecting those charged with crime as under sentence.
However, in Commonwealth v. McMullins, 315 Pa.Super. 531, 462 A.2d 718 (1983), we held in reference to the Act, albeit another section, that "a statute must be construed if possible to give effect to all of its provisions," Id., 315 Pa.Superior Ct. at 539, 462 A.2d 722, our authority being the Statutory Construction Act, 1 Pa.C.S.A. § 1921(a). To argue as appellee does that section 109 has definitional significance only is to render it surplusage. But section 109 refers directly to petitions from section 7305 commitment hearings over which an MHRO has presided. This Court, in In re Chambers, 282 Pa.Super. 327, 422 A.2d 1140 (1980), has intimated that section 109 is apposite in construing section 7304, finding that an MHRO may not issue a final order appealable to this Court and, so that a final order might issue, recourse must be had to the review procedures outlined in section 109. It therefore follows logically that what is true, even by indirection, for section 304 must similarly be true for section 305. Thus, we do to some extent adopt the trial court's adherence to consistency, holding, however, that all the provisions of the statute enjoy equivalent status. Further, once it is determined, as we now do, that section 109 applies to all of the provisions referenced by subsection (a), strict adherence thereto is compelled by the legislative policy reflected in the Act. Commonwealth v. Hubert, 494 Pa. 148, 430 A.2d 1160 (1981); In re: S.C., 280 Pa.Super. 539, 421 A.2d 853 (1980); Commonwealth v. Blaker, 293 Pa.Super. 391, 446 A.2d 976 (1981).
Adherence to procedural due process at the initial stage of the commitment process does not satisfy the requirements of continued safeguarding of a person's liberty interests as he undergoes increasingly long periods of involuntary institutionalization. To say that because due process is safeguarded in one instance, it may be ignored in *230 another, manifestly more serious situation, requires us to deny the carefully designed statute which intends to provide treatment, with the least restriction on liberty and freedom consistent with protection of the patient and society. Appellant's citation to cases holding that procedural protections must expand as the deprivation of individual liberty increases is found to be unjustified by appellee on the grounds that the cases referred to are factually distinguishable. In re Ann S., 279 Pa.Super. 618, 421 A.2d 370 (1980); Commonwealth v. C.B., 307 Pa.Super. 176, 452 A.2d 1372 (1982). We disagree. The principal remains the same, mutatis mutandis.
Appellee argues somewhat quixotically that even if section 109 requires reviews of petitions under section 305 to be heard within 72 hours (unless a continuance is required by the person's counsel[6]), decisions could not be rendered within that period. Presumably this is offered in mitigation of the delays between petitions, hearings and findings in appellants' cases (50 and 36 days). This does not exculpate appellee since section 305 refers to the procedures of section 304(a)(b) for continued involuntary treatment  and section 304(e)(7) requires that a decision be entered within 48 hours of the close of the evidence. The 72 hours required by section 109 refers to the time to conduct the hearing and not the time for decision. The statute provides for sufficient time to adequately present evidence, and a reasonable time to pass on such evidence. We can only find such digressions irrelevant as justification and unconscionable as determinative of the need for continued treatment. Seventy-two hours is an adequate evaluative time frame for an initial deprivation of liberty and is similarly adequate for an ongoing detention, during which treatment data is continually recorded. A legally sufficient hearing can be conducted within that period, thus limiting restrictions on liberty to the minimum required under the circumstances.
*231 Also under the denial of the procedural due process rubric is appellants' contention that the court's denial of access to transcripts of the commitment hearings prevented thorough preparation for review. Although tape recordings were made of the proceedings, defense counsel's requests for these or a transcripted version were denied. The court based its refusal on the lack of any expressed statutory right to transcription of proceedings, although noting that section 304 does require that some specific record be made. We find that patient access to whatever record has been made, and in the form it exists, is required at a minimum to comport with due process. We note that this was provided without further comment by the courts in Blaker and Condry, supra, and we see no reason other than a somewhat arbitrary local custom to deny the information. This would also be inconsistent with Department of Welfare regulations, 55 Pa.Code § 5100.33, giving a patient access to records and control over release of records, all of which ascribes to a policy of "openness".
Appellants' last procedural claim is that the certification mandated by section 303(d)(1-6) was never prepared by the MHRO and that, in consequence, reversal of the commitment order is warranted along with expungement of the record. In re Condry, supra. Appellee's response is that because this issue has been raised for the first time before this Court, it is waived. We find that appellee's assertion is correct but that in any event the merits of the issue are negligible. Form MH784 is required to document certification by Department of Public Welfare regulations governing commitment procedures. See 55 Pa.Code 7100.303(e)(1), Pa. Bulletin, Vol. 9, No. 41, Oct. 13, 1979. Such a form appears in the record containing the information required by the Act, albeit in an abbreviated manner. We find this adequate to fulfill the intent of the statute and the demands of the pertinent regulations.
Appellants' penultimate claim is essentially a challenge to the sufficiency of the evidence. It is alleged that the results of the 305 hearing were in error because the *232 evidence introduced at that hearing failed to establish that S.O. and R.T. posed a clear and present danger to themselves or others. A finding of clear and present danger must have been based on an overt act occurring within 30 days prior to the initial commitment established in these cases at the 302 hearings, or if there is no overt act, then the patient's inability to satisfy his own need for nourishment, personal or medical care, shelter, self-protection and safety must have been demonstrated. See Commonwealth ex rel. Gibson v. DiGiacinto, 497 Pa. 66, 439 A.2d 105 (1981).
For further periods of treatment, section 305(a) requires findings specified by section 304(a)(1-2), (b)(1-5), and further, that need for such treatment be demonstrated "by conduct during the person's most recent period of court ordered treatment." Section 304(a)(1) does speak of clear and present danger in original commitment situations; section 304(a)(2) refers to persons already involuntarily committed. There is, under these provisions, no necessity to demonstrate a recrudescence of dangerous behavior, only that such behavior as is required for an original commitment in fact occurred. Section 304(b) provides for petition, notice, evaluation, counsel and expert testimony to be presented at a hearing within five days of the filing of the petition. The record is clear that both S.O. and R.T., at the inception of their commitments were in need of treatment. Appellants' characterization of their behavior and existences as merely evidencing a penchant for the unorthodox or unconventional is somewhat naive in view of the activity leading to the original commitments of each of them. R.T. admitted to auditory and visual hallucinations which included a machine in his brain constantly telling him to kill his mother and others. On leave, he made threats to kill his mother and the police and had to be returned to the hospital. He has had seven previous mental health commitments. He is diagnosed as an Undifferentiated Schizophrenic in Acute Exacerbation. This behavior continued throughout the procedures sub judice.
*233 S.O.'s presenting problem was her bizarre behavior in Center City, Philadelphia, darting in and out of traffic, walking up the middle of the street in traffic, resisting any attempt by police and others to help her. She lives in an abandoned house without utilities and has lost several toes to frostbite. She is deemed incapable of providing basic care for herself and is diagnosed as Chronic Schizophrenic, undifferentiated type, who presents a clear and present danger to herself.
Finally, appellants argue that consistent with the policy of the Act they should have been released to less restrictive treatment environments prior to full time inpatient care under section 305. While the statement is true in theory, its application is, as a practical matter, wholly dependent on prior determinations of dangerousness with subsequent conduct that establishes continuity of the original condition. The requirements of this section are met upon the presentment of a 305 petition at the request of the institution administrator for continued involuntary treatment and request for continued inpatient treatment until outpatient care can be obtained. Where such (community) treatment is clearly inappropriate, policy considerations are of little moment.
The threshold inquiry in civil commitments is whether mental illness is present. For both appellants, the answer is clearly affirmative. However, it must be remembered that the mental condition of the person in no way diminishes his right to due process. We must reiterate the principle that the Act was intended "to create a treatment scheme under which a patient's procedural protections expand progressively as deprivation of his liberty gradually increases." In re C.B., supra, 307 Pa.Superior Ct. at 181, 452 A.2d at 1374. Without ascribing to the court or to appellee ill will or in fact any negative intent, it would appear that the rights of the appellants herein have been treated as a de minimis matter. As this Court held in Blaker, supra, "It is not enough to find, . . . that appellant `was truly in need of the services offered by [the] mental *234 health system.'" Id., 293 Pa.Superior Ct. at 398, 446 A.2d at 980. Where procedural requirements are not fulfilled the commitment is unlawful.
The real crux of the instant cases is whether or not the statutory mandate shall be applied to compel the procedural requirements in committing appellants, or whether, in fact, the pragmatic view of the need for treatment shall supersede the question of compliance with due process. Again, we note decisions holding that where mandated procedures are not followed, involuntary commitment is improper, In re C.B., supra, and the appropriate remedy is to vacate the commitment order and expunge the record. In re Condry, supra. We find no reason to diverge from this course now.
Appellee over and over seeks to place the imprimatur of legitimacy upon the procedure developed in Philadelphia County by assuring us that the commitments to which appellants were subjected conform to established custom and practice. We are not comforted. Especially in dealing with the mentally ill, custom and practice have in the past allowed society to look benignly at treatment which can only be described as barbarous. It is no less true now that habit necessarily provides no reliable indicium of anything more than the expedient unless it conforms precisely to the requirements of legislation designed to safeguard both the rights and the lives of those so affected. We cannot, in exercising our paternalistic impulses, forget that due process requirements must be met to assure compliance with legal standards related to the restriction of liberty. We do not mean to denigrate good intentions, but only to make clear that more is required than a sincere desire to help. Assistance must be rendered properly, or in a larger sense, this carefully balanced system will fail.
On the other hand, the same restraint of liberty which prevents us from shouting "fire" in a crowded theater, prohibits as well the exercise of "liberty" by those to whom it is in fact anathema, spelling certain, although *235 possibly slow, destruction. It is this consideration which must affect most strongly our determination of appropriate relief. We, therefore, make the rules established in this case prospective only requiring strict adherence to our reading of the statute in all cases which come before the court as of thirty days from the filing of this Opinion. See In re S.C., supra. In short, we disagree, not with appellee's conclusions, but with the methodology employed to reach them.
Order affirmed.
Jurisdiction relinquished.
NOTES
[1] § 7302. Involuntary emergency examination and treatment authorized by physician  not to exceed seventy-two hours

(a) Application for Examination.  Emergency examination may be undertaken at a treatment facility upon the certification of a physician stating the need for such examination; or upon a warrant issued by the county administrator authorizing such examination; or without a warrant upon application by a physician or other authorized person who has personally observed conduct showing the need for such examination.
(1) Warrant for Emergency Examination.  Upon written application by a physician or other responsible party setting forth facts constituting reasonable grounds to believe a person is severely mentally disabled and in need of immediate treatment, the county administrator may issue a warrant requiring a person authorized by him, or any peace officer, to take such person to the facility specified in the warrant.
(2) Emergency Examination Without a Warrant.  Upon personal observation of the conduct of a person constituting reasonable grounds to believe that he is severely mentally disabled and in need of immediate treatment, and physician or peace officer, or anyone authorized by the county administrator may take such person to an approved facility for an emergency examination. Upon arrival, he shall make a written statement setting forth the grounds for believing the person to be in need of such examination.
(b) Examination and Determination of Need for Emergency Treatment.  A person taken to a facility shall be examined by a physician within two hours of arrival in order to determine if the person is severely mentally disabled within the meaning of section 301[1] and in need of immediate treatment. If it is determined that the person is severely mentally disabled and in need of emergency treatment, treatment shall be begun immediately. If the physician does not so find, or if at any time it appears there is no longer a need for immediate treatment, the person shall be discharged and returned to such place as he may reasonably direct. The physician shall make a record of the examination and his findings. In no event shall a person be accepted for involuntary emergency treatment if a previous application was granted for such treatment and the new application is not based on behavior occurring after the earlier application.
(c) Notification of Rights at Emergency Examination.  Upon arrival at the facility, the person shall be informed of the reasons for emergency examination and of his right to communicate immediately with others. He shall be given reasonable use of the telephone. He shall be requested to furnish the names of parties whom he may want notified of his custody and kept informed of his status. The county administrator or the director of the facility shall:
(1) give notice to such parties of the whereabouts and status of the person, how and when he may be contacted and visited, and how they may obtain information concerning him while he is in inpatient treatment; and
(2) take reasonable steps to assure that while the person is detained, the health and safety needs of any of his dependents are met, and that his personal property and the premises he occupies are secure.
(d) Duration of Emergency Examination and Treatment.  A person who is in treatment pursuant to this section shall be discharged whenever it is determined that he no longer is in need of treatment and in any event within 120 hours, unless within such period:
(1) he is admitted to voluntary treatment pursuant to section 202 of this act;[2] or
(2) a certification for extended involuntary emergency treatment is filed pursuant to section 303 of this act.[3]
[2] § 7303. Extended involuntary emergency treatment certified by a judge or mental health review officer  not to exceed twenty days

(a) Persons Subject to Extended Involuntary Emergency Treatment.  Application for extended involuntary emergency treatment may be made for any person who is being treated pursuant to section 302[1] whenever the facility determines that the need for emergency treatment is likely to extend beyond 120 hours. The application shall be filed forthwith in the court of common pleas, and shall state the grounds on which extended emergency treatment is believed to be necessary. The application shall state the name of any examining physician and the substance of his opinion regarding the mental condition of the person.
(b) Appointment of Counsel and Scheduling of Informal Hearing.  Upon receiving such application, the court of common pleas shall appoint an attorney who shall represent the person unless it shall appear that the person can afford, and desires to have, private representation. Within 24 hours after the application is filed, an informal hearing shall be conducted by a judge or by a mental health review officer and, if practicable, shall be held at the facility.
(c) Informal Conference on Extended Emergency Treatment Application.  (1) At the commencement of the informal conference, the judge or the mental health review officer shall inform the person of the nature of the proceedings. Information relevant to whether the person is severely mentally disabled and in need of treatment shall be reviewed, including the reasons that continued involuntary treatment is considered necessary. Such explanation shall be made by a physician who examined the person and shall be in terms understandable to a layman. The judge or mental health review officer may review any relevant information even if it would be normally excluded under rules of evidence if he believes that such information is reliable. The person or his representative shall have the right to ask questions of the physician and of any other witnesses and to present any relevant information. At the conclusion of the review, if the judge or the review officer finds that the person is severely mentally disabled and in need of continued involuntary treatment, he shall so certify. Otherwise, he shall direct that the facility director or his designee discharge the person.
(2) A record of the proceedings which need not be a stenographic record shall be made. Such record shall be kept by the court or mental health review officer for at least one year.
(d) Contents of Certification.  A certification for extended involuntary treatment shall be made in writing upon a form adopted by the department and shall include:
(1) findings by the judge or mental health review officer as to the reasons that extended involuntary emergency treatment is necessary;
(2) a description of the treatment to be provided together with an explanation of the adequacy and appropriateness of such treatment, based upon the information received at the hearing;
(3) any documents required by the provisions of section 302;
(4) the application as filed pursuant to section 303(a);[2]
(5) a statement that the person is represented by counsel; and
(6) an explanation of the effect of the certification, the person's right to petition the court for release under subsection (g), and the continuing right to be represented by counsel.
(e) Filing and Service.  The certification shall be filed with the director of the facility and a copy served on the person, such other parties as the person requested to be notified pursuant to section 302(c), and on counsel.
(f) Effect of Certification.  Upon the filing and service of a certification for extended involuntary emergency treatment, the person may be given treatment in an approved facility for a period not to exceed 20 days.
(g) Petition to Common Pleas Court.  In all cases in which the hearing was conducted by a mental health review officer, a person made subject to treatment pursuant to this section shall have the right to petition the court of common pleas for review of the certification. A hearing shall be held within 72 hours after the petition is filed unless a continuance is requested by the person's counsel. The hearing shall include a review of the certification and such evidence as the court may receive or require. If the court determines that further involuntary treatment is necessary and that the procedures prescribed by this act have been followed, it shall deny the petition. Otherwise, the person shall be discharged.
(h) Duration of Extended Involuntary Emergency Treatment.  Whenever a person is no longer severely mentally disabled or in need of immediate treatment and, in any event, within 20 days after the filing of the certification, he shall be discharged, unless within such period;
(1) he is admitted to voluntary treatment pursuant to section 202;[3] or
(2) the court orders involuntary treatment pursuant to section 304.[4]
[3] § 7304. Court-ordered involuntary treatment not to exceed ninety days

(a) Persons for Whom Application May be Made.  (1) A person who is severely mentally disabled and in need of treatment, as defined in section 301(a),[1] may be made subject to court-ordered involuntary treatment upon a determination of clear and present danger under section 301(b)(1) (serious bodily harm to others), or section 301(b)(2)(i) (inability to care for himself, creating a danger of death or serious harm to himself), or 301(b)(2)(ii) (attempted suicide), or 301(b)(2)(iii) (self-mutilation).
(2) Where a petition is filed for a person already subject to involuntary treatment, it shall be sufficient to represent, and upon hearing to reestablish, that the conduct originally required by section 301 in fact occurred, and that his condition continues to evidence a clear and present danger to himself or others. In such event, it shall not be necessary to show the reoccurrence of dangerous conduct, either harmful or debilitating, within the past 30 days.
(b) Procedures for Initiating Court-ordered Involuntary Treatment for Persons Already Subject to Involuntary Treatment.  (1) Petition for court-ordered involuntary treatment for persons already subject to treatment under sections 303, 304 and 305[2] may be made by the county administrator or the director of the facility to the court of common pleas.
(2) The petition shall be in writing upon a form adopted by the department and shall include a statement of the facts constituting reasonable grounds to believe that the person is severely mentally disabled and in need of treatment. The petition shall state the name of any examining physician and the substance of his opinion regarding the mental condition of the person. It shall also state that the person has been given the information required by subsection (b)(3).
(3) Upon the filing of the petition the county administrator shall serve a copy on the person, his attorney, and those designated to be kept informed, as provided in section 302(c),[3] including an explanation of the nature of the proceedings, the person's right to an attorney and the services of an expert in the field of mental health, as provided by subsection (d).
(4) A hearing on the petition shall be held in all cases, not more than five days after the filing of the petition.
(5) Treatment shall be permitted to be maintained pending the determination of the petition.
(c) Procedures for Initiating Court-ordered Involuntary Treatment for Persons Not in Involuntary Treatment.  (1) Any responsible party may file a petition in the court of common pleas requesting court-ordered involuntary treatment for any person not already in involuntary treatment for whom application could be made under subsection (a).
(2) The petition shall be in writing upon a form adopted by the department and shall set forth facts constituting reasonable grounds to believe that the person is within the criteria for court-ordered treatment set forth in subsection (a). The petition shall state the name of any examining physician and the substance of his opinion regarding the mental condition of the person.
(3) Upon a determination that the petition sets forth such reasonable cause, the court shall appoint an attorney to represent the person and set a date for the hearing as soon as practicable. The attorney shall represent the person unless it shall appear that he can afford, and desires to have, private representation.
(4) The court, by summons, shall direct the person to appear for a hearing. The court may issue a warrant directing a person authorized by the county administrator or a peace officer to bring such person before the court at the time of the hearing if there are reasonable grounds to believe that the person will not appear voluntarily. A copy of the petition shall be served on such person at least three days before the hearing together with a notice advising him that an attorney has been appointed who shall represent him unless he obtains an attorney himself, that he has a right to be assisted in the proceedings by an expert in the field of mental health, and that he may request or be made subject to psychiatric examination under subsection (c)(5).
(5) Upon motion of either the petitioner or the person, or upon its own motion, the court may order the person to be examined by a psychiatrist appointed by the court. Such examination shall be conducted on an outpatient basis, and the person shall have the right to have counsel present. A report of the examination shall be given to the court and counsel at least 48 hours prior to the hearing.
(6) Involuntary treatment shall not be authorized during the pendency of a petition except in accordance with section 302 or section 303.
(d) Professional Assistance.  A person with respect to whom a hearing has been ordered under this section shall have and be informed of a right to employ a physician, clinical psychologist or other expert in mental health of his choice to assist him in connection with the hearing and to testify on his behalf. If the person cannot afford to engage such a professional, the court shall, on application, allow a reasonable fee for such purpose. The fee shall be a charge against the mental health and mental retardation program of the locality.
(e) Hearings of Petition for Court-order Involuntary Treatment.  A hearing on a petition for court-ordered involuntary treatment shall be conducted according to the following:
(1) The person shall have the right to counsel and to the assistance of an expert in mental health.
(2) The person shall not be called as a witness without his consent.
(3) The person shall have the right to confront and cross-examine all witnesses and to present evidence in his own behalf.
(4) The hearing shall be public unless it is requested to be private by the person or his counsel.
(5) A stenographic or other sufficient record shall be made, which shall be impounded by the court and may be obtained or examined only upon the request of the person or his counsel or by order of the court on good cause shown.
(6) The hearing shall be conducted by a judge or by a mental health review officer and may be held at a location other than a courthouse when doing so appears to be in the best interest of the person.
(7) A decision shall be rendered within 48 hours after the close of evidence.
(f) Determination and Order.  Upon a finding by clear and convincing evidence that the person is severely mentally disabled and in need of treatment and subject to subsection (a), an order shall be entered directing treatment of the person in an approved facility as an inpatient or an outpatient, or a combination of such treatment as the director of the facility shall from time to time determine. Inpatient treatment shall be deemed appropriate only after full consideration has been given to less restrictive alternatives. Investigation of treatment alternatives shall include consideration of the person's relationship to his community and family, his employment possibilities, all available community resources, and guardianship services. An order for inpatient treatment shall include findings on this issue.
(g) Duration of Court-ordered Involuntary Treatment.  (1) A person may be made subject to court-ordered involuntary treatment under this section for a period not to exceed 90 days, excepting only that: Persons may be made subject to court-ordered involuntary treatment under this section for a period not to exceed one year if the person meets the criteria established by clause (2).
(2) A person may be subject to court-ordered involuntary treatment for a period not to exceed one year if:
(i) severe mental disability is based on acts giving rise to the following charges under the Pennsylvania Crimes Code;[4] murder (§ 2502); voluntary manslaughter (§ 2503); aggravated assault (§ 2702); kidnapping (§ 2901); rape (§ 3121(1) and (2)); involuntary deviate sexual intercourse (§ 3123(1) and (2)); arson (§ 3301); and
(ii) a finding of incompetency to be tried or a verdict of acquittal because of lack of criminal responsibility has been entered.
(3) If at any time the director of a facility concludes that the person is not severely mentally disabled or in need of treatment pursuant to subsection (a), he shall discharge the person provided that no person subjected to involuntary treatment pursuant to clause (2) may be discharged without a hearing conducted pursuant to clause (4).
(4) In cases involving involuntary treatment pursuant to clause (2), whenever the period of court-ordered involuntary treatment is about to expire and neither the director nor the county administrator intends to apply for an additional period of court-ordered involuntary treatment pursuant to section 305 or at any time the director concludes that the person is not severely mentally disabled or in need of treatment, the director shall petition the court which ordered the involuntary treatment for the unconditional or conditional release of the person. Notice of such petition shall be given to the person, the county administrator and the district attorney. Within 15 days after the petition has been filed, the court shall hold a hearing to determine if the person is severely mentally disabled and in need of treatment. Petitions which must be filed simply because the period of involuntary treatment will expire shall be filed at least ten days prior to the expiration of the court-ordered period of involuntary treatment. If the court determines after hearing that the person is severely mentally disabled and in need of treatment, it may order additional involuntary treatment not to exceed one year; if the court does not so determine, it shall order the discharge of the person.
[4] § 7305. Additional periods of court-ordered involuntary treatment

(a) At the expiration of a period of court-ordered involuntary treatment under section 304(g)[1] or this section, the court may order treatment for an additional period upon the application of the county administrator or the director of the facility in which the person is receiving treatment. Such order shall be entered upon hearing on findings as required by sections 304(a) and (b), and the further finding of a need for continuing involuntary treatment as shown by conduct during the person's most recent period of court-ordered treatment. The additional period of involuntary treatment shall not exceed 180 days; provided that persons meeting the criteria of section 304(g)(2) may be subject to an additional period of up to one year of involuntary treatment. A person found dangerous to himself under section 301(b)(2)(i), (ii) or (iii)[2] shall be subject to an additional period of involuntary full-time inpatient treatment only if he has first been released to a less restrictive alternative. This limitation shall not apply where, upon application made by the county administrator or facility director, it is determined by a judge or mental health review officer that such release would not be in the person's best interest.
(b) The director of the facility in which the person is receiving treatment shall notify the county administrator at least ten days prior to the expiration of a period of involuntary commitment ordered under section 304 or this section.
1976, July 9, P.L. 817, No. 143, § 305, effective in 60 days. As amended 1978, Nov. 26, P.L. 1362, No. 324, § 1, effective in 60 days.
[5] R.T. submitted himself to voluntary commitment on February 21, 1984. S.O. whereabouts are unknown at the time of this appeal as she failed to return from unauthorized leave. By order of February 8, 1984, her petition for review was dismissed.
[6] Section 304(b)(4) would require such a hearing to be held in all cases, not more than five days after filing of the petition.