**Appeal of J.S., Philadelphia County Office of Mental Health and Retardation Services.**

Superior Court of Pennsylvania.

Submitted Nov. 28, 1988.

Filed July 10, 1989.

Reargument Denied Sept. 15, 1989.

Petition for Allowance of Appeal Granted Jan. 16, 1990.

John Packel, Asst. Public Defender, Philadelphia, for appellant.

Guy Vilim, City Sol., Philadelphia, Philadelphia County Office, participating party.

Before KELLY, POPOVICH and HESTER, JJ.

HESTER, Judge:

J.S. appeals from a July 15, 1988 commitment order wherein the trial court vacated a master's decision to discharge her due to the fact that she had not received a court hearing required by the Mental Health Procedures Act of 1976, 50 P.S. §§ 7101 *et seq.* (the "Act"), following her commitment to Thomas Jefferson University Hospital. Appellant raises two contentions. First: The trial court's July 15, 1988 order vacating the master's order is void since it reversed an October 15, 1987 order in violation of 42 Pa.C.S. § 5505 (order may not be modified thirty days after entry). Second: The trial court erred in ruling that a patient who

voluntarily commits himself for a period of seventy-two hours under section 206 of the Act can be held for 120 hours under a section 302 involuntary commitment after the patient has given the seventy-two hour notice of intent to leave the facility. We agree with appellant's second contention and hold that, if involuntary proceedings are initiated after a patient has voluntarily committed himself, then either a hearing on the involuntary petition must be held within the time constraints of section 206 of the Act or the patient must be released under section 206 of the Act. Accordingly, we reverse.

The record establishes the following. On Tuesday, September 29, 1987, R.S. (daughter of J.S.) initiated proceedings for J.S.'s involuntary commitment under section 302 of the Act by applying for examination. No further action was taken on the involuntary application, *i.e.*, no warrant was issued under section 302(a)(1) of the Act, and no examination under section 302(a)(2) of the Act occurred. On Wednesday, September 30, 1987, R.S. convinced J.S. to go to Thomas Jefferson University Hospital and voluntarily commit herself pursuant to section 201 of the Act. Under section 206 of the Act, persons who have been admitted voluntarily to treatment must be released upon indicating a desire to leave, unless they have agreed to be held for a set period of time after they indicate a desire to leave. However, seventy-two hours is the maximum amount of time which a voluntarily-committed person may be detained without being released.

Immediately after signing the voluntary commitment papers and agreeing to a detention of the maximum of seventy-two hours, J.S. said that she wanted to leave by Saturday, October 3, 1987, when the seventy-two hour period expired. N.T., 10/5/87, at 50. She was told that she would be released then. Instead, however, on Thursday, October 1, 1987, the hospital completed the previously instituted involuntary commitment proceedings under sections 302 and 303 of the Act by examining J.S. and certifying that she needed treatment. Pursuant to sections 302 and 303, J.S.

had to be released within 120 hours of initiation of the involuntary proceedings unless a mental health review officer determined within that period that she was severely mentally disabled and that she required extended involuntary in-patient treatment.

On Monday, October 5, 1987, the section 303 hearing was held before mental health master Joseph M. Davidson. J.S.'s husband and daughter testified at the hearing. Their testimony established that in the month prior to her commitment, J.S. had imagined an affair between her husband and her girlfriend. She had become violent with her husband, at one point threatening to kill herself, him, and the girlfriend. *See* N.T., 10/5/87, at 7–10. The doctor who testified at the hearing recommended extended, twenty-day involuntary inpatient treatment because J.S. was potentially dangerous and had no insight into her condition. *Id.* at 45.

The master found that J.S. was severely mentally disabled within the meaning of the Act and ordered the extended involuntary treatment of twenty days. During the course of the hearing, J.S. told him about her voluntary commitment and that when she admitted herself on Wednesday, September 30, 1987, she had told the hospital that she wished to leave by Saturday, October 3, 1987. The master stated that he would check the hospital records and that he would discharge her the next day if she had, in fact, been committed voluntarily and had failed to receive a hearing before a master within the seventy-two hour time constraints of section 206 of the Act. On October 5, 1987, Davidson discharged J.S. and dismissed the section 303 petition on the grounds that J.S. had been held beyond the seventy-two hour period allowed by law.

The court of common pleas affirmed Davidson's order by order dated October 5, 1987. The court of common pleas order dismissed the involuntary commitment petition and discharged J.S. This order was docketed on October 15, 1987. Also on that date, the Philadelphia County Office of Mental Health and Mental Retardation filed post-trial motions to the October 5, 1987 order of the court of common

pleas, and on November 2, 1987, the office also filed a notice of appeal to us from the October 5, 1987 order. On October 31, 1987, the trial court denied the office's post-trial motions. This October 31, 1987 order was docketed November 4, 1987, and was vacated at a hearing held November 11, 1987. On December 14, 1987, pursuant to a petition for voluntary withdrawal of the appeal by the mental health office, the appeal before us from the October 31, 1987 order was discontinued.

Subsequently, on July 15, 1988, the court of common pleas granted appellee's post-trial motions, vacated its October 5, 1987 order discharging appellant, vacated the master's order discharging J.S., and remanded the matter to the master for further proceedings consistent with an opinion filed the same day. This appeal followed.

Initially, we address appellant's argument that the trial court improperly vacated its October 5, 1987 order under section 42 Pa.C.S. § 5505, which states, *"Except as otherwise provided or prescribed by law,* a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed." (emphasis added).

We first quote from Pa.R.C.P. 227.1:

(a) *After trial and upon the written Motion for Post–Trial Relief filed by any party, the court may*

(1) order a new trial as to all or any of the issues; or

(2) direct the entry of judgment in favor of any party; or

(3) remove a nonsuit; or

(4) *affirm, modify or change the decision or decree nisi;* or

(5) *enter any other appropriate order.*

(Emphasis added).

█ The October 5, 1987 order affirming the master's discharge order was a decision in the case of a nonjury trial regarding which a motion for post-trial relief must be filed

under Pa.R.C.P. 227.1(c)(2). *See In re Wilson,* 303 Pa.Super. 326, 449 A.2d 711 (1982); *see also Commonwealth v. Wertz,* 362 Pa.Super. 255, 523 A.2d 1179 (1987). The office filed timely post-trial motions to the October 5, 1987 order. The October 31, 1987 order denying these post-trial motions was vacated on November 1, 1987, within the thirty days prescribed by section 5505. The vacation of the order denying post-trial motions left the status of this case as follows: properly filed post-trial motions were pending with respect to the October 5, 1987 order which had affirmed the master's discharge. Pa.R.Civ.P. 227.1 provides that a court may modify any order to which post-trial motions have been properly filed. Accordingly, the trial court had the authority to vacate its October 5, 1987 order at *any time* based upon the pending and properly filed post-trial motions. Consequently, the trial court had the power to enter its July 15, 1988 order granting post-trial motions and reversing its October 5, 1987 order.

Next, we will address the merits of this appeal.[1] We must determine whether involuntary commitment proceedings completed after a patient has expressed his desire to leave a hospital following a voluntary commitment may extend the time period within which the patient must be released absent a hearing. Based on the statutory language of the Act and prior judicial interpretations of it, we hold that the procedure utilized in this case was improper on the grounds that appellant's hearing on the involuntary petition had to be held within seventy-two hours of when she expressed her desire to leave the mental health facility under her voluntary commitment. While involuntary commitment proceedings may follow a voluntary commitment,

**1.** We recognize that the doctrine of mootness is implicated in this appeal since the patient is discharged and currently under out-patient psychiatric care. However, we normally review commitment procedures even if the patient is discharged since often the patient is discharged at the time we are reviewing the challenged proceedings. The procedures, which are of great public concern due to implication of liberty interests, otherwise would be capable of constantly evading appellate review. *See In re S.O.,* 342 Pa.Super. 215, 492 A.2d 727 (1985); *In re Wilson,* 303 Pa.Super. 326, 449 A.2d 711 (1982); *see also Commonwealth v. Bernhardt,* 359 Pa.Super. 413, 519 A.2d 417 (1986).

either a hearing on the involuntary commitment or a patient's release must occur within the time constraints of section 206 of the Act. Accordingly, we reverse the trial court's July 15, 1988 order and affirm the October 5, 1987 master's order discharging J.S.

We begin our analysis with the master's February 1, 1988 opinion, which he filed in support of his decision and which states in pertinent part:

A major issue in this case has revolved around the question of whether a person who signs into the hospital and then gives a seventy-two hour notice can be held for one hundred and twenty hours under Section 302 of the Mental Health Procedures Act, even if there is no new behavior since they have been admitted.

. . . .

I based my Opinion not only on my reading of the Act, but my involvement with the Amendments to the Act in 1978. I testified in Harrisburg concerning changes in the Mental Health Procedures Act, some of which were implemented, including the one hundred and twenty hour/five day period under Section 302. One of the suggestions that I myself made was to amend the Act so that all hearings would take place within five days after notice, including those under Section 206 of the Act. I felt that a uniform period would be preferable and would also give both the Petitioner and Respondent time to prepare anything that needed to be done. This was especially true over a weekend period. This suggestion was not accepted.

Therefore, it is my understanding that the legislature did not feel that what was suggested was an appropriate amendment and left the provision intact. What the City Solicitor suggests goes one step beyond what I had asked for, in that what they would do would be to append a 302 at the end of the seventy-two hour period and therefore have a person who voluntarily signs in the hospital staying in a hospital for eight days, instead of seventy-two

hours as they had requested or one hundred and twenty hours as Section 302 of the Act currently requires.

This certainly seems contrary to the terms of the Act which always encourages voluntary treatment. This would penalize somebody for signing in voluntarily. Even without my testimony and my appearance at the hearings of the Welfare Committee, I would think that it would be clear that the Act does not intend to penalize a person for voluntarily seeking treatment.

Supplemental Opinion of Deputy Mental Health Master, 02/01/88, at 1-2.

We concur with these observations. The Act contains a clear preference for least restrictive treatment:

It is the policy of the Commonwealth of Pennsylvania to seek to assure the availability of adequate treatment to persons who are mentally ill, and it is the purpose of this act to establish procedures whereby this policy can be effected. The provisions of this act shall be interpreted in conformity with the principles of due process to make voluntary and involuntary treatment available where the need is great and its absence could result in serious harm to the mentally ill person or to others. *Treatment on a voluntary basis shall be preferred to involuntary treatment and in every case, the least restrictions consistent with adequate treatment shall be employed.*

50 P.S. § 7102 (emphasis added).

Section 206 governs voluntary proceedings and unequivocally provides for release within a maximum of seventy-two hours of when a voluntarily-committed patient seeks discharge: "A person in voluntary inpatient treatment may *withdraw* at any time by giving written notice unless, as stated in section 203, he has agreed in writing at the time of his admission that his release can be delayed following such notice for a period to be specified in the agreement, *provided that such period shall not exceed 72 hours.*" 50 P.S. § 7206 (footnote omitted) (emphasis added). Significant in this case is the fact that appellee acquiesced in J.S.'s voluntary commitment. They were not required under the

Act to accept J.S.'s voluntary commitment, but could have proceeded with the involuntary proceedings on September 30, 1987 if they determined that adequate treatment required involuntary commitment.

The master observed that the procedure utilized in this case may result in a patient being hospitalized up to eight days without a hearing. This observation is correct. If a patient states a desire to leave following voluntary commitment on a seventy-two hour basis, a mental health facility could initiate involuntary proceedings on the seventy-second hour of the patient's request for discharge. Under the provisions applicable to involuntary commitments, a hearing is not required until up to five days after initiation of the petition.

The Act does not envision such a lengthy, unreviewed deprivation of liberty. As the master notes, five days is the longest a patient is to be kept involuntarily without a hearing under the Act. The procedure utilized by appellee could result in eight days of involuntary and unreviewed commitment, to the detriment of voluntarily committed patients. Thus, the procedure is inconsistent with the statutory purpose of preferring the least restrictive form of treatment as well as due process concerns.

■ The Mental Health Procedures Act is strictly construed due to a consideration directly implicated by our decision in this case: "commitment entails a massive deprivation of liberty." *Commonwealth v. Hubert,* 494 Pa. 148, 153, 430 A.2d 1160, 1162 (1981); *see also In re S.C.,* 280 Pa.Super. 539, 547, 421 A.2d 853 (1980), *quoting Eubanks v. Clarke,* 434 F.Supp. 1022, 1028 (E.D.Pa.1977) ("[T]he very nature of civil commitment entails an extraordinary deprivation of liberty. A statute sanctioning such a drastic curtailment of the rights of citizens must be narrowly, even grudgingly construed, in order to avoid deprivations of liberty without due process of law.").

Moreover, we fail to see how the requirement that a hearing be held within seventy-two hours of when the patient asks to leave interferes with any countervailing

interest protected by the Act. Liberty interests are protected by the hearing; society's interests are protected by the fact that an individual can be hospitalized following expression of a desire to leave up to three days without a hearing. Society is not threatened by requiring a hearing within seventy-two hours instead of 120 hours. Appellee presents no compelling reason why a hearing cannot be held within the time constraints of section 206, when an individual's liberty interests are at issue.

We emphasize that nothing in this opinion requires that a patient be discharged without treatment as suggested by appellant. Involuntary proceedings may be instituted following a voluntary commitment if involuntary proceedings are appropriate. Thus, we agree with appellee to the extent that it argues that nothing in the Act prohibits initiation of involuntary proceedings following a voluntary commitment. We merely agree with the master that if a patient has been voluntarily committed, has indicated a desire to leave, and needs further medical treatment, then the hearing on the involuntary proceedings be held within the time constraints of section 206 of the Act. Thus, the hearing on the involuntary commitment must be held within seventy-two hours if the voluntarily-committed patient has agreed to be hospitalized for that period following expression of his desire to leave. If the patient has agreed only to a lesser period and if the mental health facility has acquiesed in voluntary treatment under those terms, then release or a hearing must follow within the period which the patient agreed to remain in the hospital following expression of a desire to leave.

We must reject appellee's contention that the examination safeguard built into involuntary commitment proceedings adequately protects an individual's liberty interests. This is evident from the testimony in this case. Under section 302(b), a person who has been taken to a treatment facility involuntarily must be examined by a physician within two hours of arrival. This examination is to determine if the person is severely mentally disabled and in need of treat-

ment. Appellee suggests that this physician's examination sufficiently safeguards an individual's liberty interests, so that a hearing is unnecessary. We disagree.

From the record in this case, it appears that J.S.'s two-hour "examination" consisted of a physician's observation of her during group therapy, after which he concluded that she was mentally disabled because she interrupted the group discussion by talking about an "Arab plot" and about putting cable television in the northeast. N.T., 10/5/87, at 37–38. The cursory nature of this examination raises doubts as to whether her liberty interests were adequately protected by the examination. The legislature envisioned court review as the protection of the individual, not examination by medical personnel.

We do not question that J.S. required medical treatment.[2] "However, it must be remembered that the mental condition of the person in no way diminishes his right to due process." *In re S.O.*, 342 Pa.Super. 215, 233, 492 A.2d 727, 737 (1985). Further, appellee fails to address a compelling question. What if J.S. had not been severely mentally disabled? It is apparent from the record that J.S. was outraged at her involuntary deprivation of liberty over a weekend. During the hearing, she expressed surprise that something was wrong with her brain. She should have received a hearing by Saturday, even if the only objective which would have been accomplished at the hearing was that she would have gained more insight into why she was in the facility. If she had not been mentally disabled, the benefit of having a Saturday hearing instead of a Monday hearing strikes at the heart of our freedom interests.

We have had the opportunity to construe the Act in the past. We have required strict adherence to the procedural due process safeguards built into the Act, which was intended to provide treatment with the "least restriction on liberty and freedom consistent with protection of the patient and

2. We note that according to the trial court, J.S. has improved substantially under out-patient psychiatric care following her discharge by the master.

society." *Id.*, 342 Pa.Superior Ct. at 230, 492 A.2d at 735. While we acknowledge J.S.'s need for treatment may have been real, "It is not enough to find that appellant was truly in need of the services offered by the mental health system.... Where procedural requirements are not fulfilled, the commitment is unlawful." *Id.*, 342 Pa.Superior Ct. at 233–34, 492 A.2d at 727. We cannot permit mandated, due process procedures to be ignored due to a need for treatment. *Id.*

Appellee also relies upon the regulations promulgated under the Act in support of its position, specifically 55 Pa.Code § 5100.76(b), which provides:

> (b) The person receiving a signed Form MH 781–F from a patient shall immediately examine the patient's record to determine whether the patient has previously agreed to remain in treatment for a specified period not to exceed 72 hours after having given written notice of intent to withdraw from involuntary treatment. If no such consent has been given, the patient may immediately withdraw from treatment unless an application for emergency involuntary treatment is executed under section 302 of the act (50 P.S. § 7302), and the patient is advised accordingly.

Appellee posits that this authorizes the initiation of involuntary proceedings after a patient has submitted to voluntary treatment. We agree. However, the regulation does not address the issue presented in this appeal. Our decision does not prevent the initiation of involuntary proceedings following voluntary commitment. We hold only that a hearing on the involuntary petition must be held within the time constraints of section 206, *i.e.*, within the time period which the patient agreed to remain in treatment voluntarily following expression of a desire to leave. The regulation is entirely silent as to when a hearing must be held on the involuntary petition which has been initiated following the voluntary commitment. As the regulation does not address

this issue, it provides no support for appellee's position.[3]

Finally, appellee relies upon *Commonwealth v. C.B.*, 307 Pa.Super. 176, 452 A.2d 1372 (1982), in support of its position. In *C.B.*, involuntary proceedings were initiated after a patient voluntarily committed himself; however, the commitment hearing was held within seventy-two hours of when the patient asked to leave. The *C.B.* court did not address the issue before us, and appellee's reliance upon it is misplaced.

For the foregoing reasons, the order is reversed. Jurisdiction is relinquished.

KELLY, J., files a concurring and dissenting opinion.

KELLY, Judge, concurring and dissenting.

While I share the majority's concern that involuntary commitment proceedings might be abused to detain persons who give proper notice of their intent to withdraw from voluntary commitment, I find no statutory authority for the rule announced by the majority that a judicial hearing must be conducted within 72 hours of notice of intent to withdraw

---

**3.** 55 Pa.Code § 5100.76(c) appears to provide support for appellee's position:

> (c) If consent to remain in treatment had been given, the person examining the record shall notify the patient and a member of the treatment team or their designer, who shall be available at all times. *The treating facility may delay release of such person for a period not exceeding that specified if* the treatment team or its designer has reason to believe that:
>
> (1) The individual is severely mentally disabled and *a petition for involuntary treatment* under section 302 of the act (50 P.S. 7302), *is to be filed before the end of the specified time period;* or
>
> (2) Immediate release would be medically dangerous to the health of the individual.

To the extent this regulation can be construed as permitting delay of the section 206 release, we reject it as contrary to the express provisions of the Act. *See Northampton, Bucks County Municipal Authority v. Commonwealth*, 521 Pa. 253, 555 A.2d 878 (1989) (while regulations carry a presumption of validity, court can reject them if they are inconsistent with the meaning of the statute they are intended to interpret).

from involuntary commitment. I analyze the applicable statutes differently.

Though R.S. had originally made an application for examination under 50 P.S. § 7302(a)(1), in order to initiate *involuntary* civil commitment, no warrant for examination was issued, no examination was conducted, and no determination of the need for treatment was made at that time. *See* 50 P.S. §§ 7302(a) and 7302(b). Instead, on the following day, R.S. convinced J.S. to accede to voluntary civil commitment.[1]

Under 50 P.S. § 7203, informed consent to voluntary commitment requires, among other things, clear notice that a written request and a delay of a specified period of *not more than* 72 hours will be required in order to obtain release from voluntary commitment. Presumably, a patient may reduce the authorized delay between written notice and release to any amount of time less than seventy-two hours. Here, J.S. consented in writing to the *maximum* delay of seventy-two hours. Upon admittance, however, she proceeded to give immediate notice of her intent to withdraw from voluntary commitment, thus triggering the seventy-two hour release provision.

The majority hold that if J.S.'s voluntary commitment was to be extended beyond the seventy-two hour delay authorized, a judicial hearing had to be held within seventy-two hours. The majority cite no statutory authority for that requirement. Rather, they engraft the requirement upon statutes which provide no means whatsoever for extending "voluntary" treatment, 50 P.S. §§ 7201–7206, and upon statutes which provide no such restriction on involuntary commitment, 50 P.S. §§ 7301–7306.

Appellee argues that continued detention of J.S. beyond the 72 hour delay authorized, was proper under 50 P.S. § 7302(d). To a limited extent, I agree with appellee's

---

1. Our legislature has expressed a clear preference for voluntary rather than involuntary civil commitment. 50 P.S. § 7102. Thus, it was plainly appropriate for hospital officials to process J.S.'s voluntary commitment, rather than R.S.'s original application seeking involuntary commitment of J.S.

reasoning. But, I reject appellee's application of that reasoning to the facts of this case.

The provisions of 50 P.S. §§ 7301–7306 contain no special rules for patients previously committed voluntarily. Two possibilities then logically arise. Either the same rules apply for converting a voluntary commitment to an involuntary commitment as apply to initial involuntary commitments, or such conversions are simply not allowed. Like the majority, I reject, utterly, any suggestion that once a person enters voluntary commitment they cannot thereafter be involuntarily committed. When there is truly a clear and present danger that a patient may harm himself, herself, or others, as the result of a severe mental disability, both the patient and the community have a compelling interest in ensuring that appropriate treatment and restraint is provided. Liberty interests and medical efficacy create a strong preference for *voluntary* treatment; nonetheless, if the need for treatment and/or restraint outlasts the patient's consent, both communal necessity and basic humanity command that compulsion authorized by law be substituted for consent. Because there are no specific provisions governing conversion from voluntary commitment to involuntary commitment, we must assume that the legislature intended no differences in involuntary commitment procedures under such circumstances.[2]

When a prospective involuntary commitment patient is not otherwise in lawful custody, detention for examination may only be conducted under the authority of a lawful warrant for examination, or under emergency powers delegated to physicians, law enforcement officers, and other properly designated persons, to detain and transport patients for emergency examination, upon personal observation of conduct providing reasonable grounds to believe the patient is severely mentally disabled and in need of immedi-

---

2. In the case of *In re Condry,* 304 Pa.Super 131, 450 A.2d 136 (1982), this Court approved *sub silentio* the initiation of involuntary commitment proceedings following a patient's election to give notice of intent to withdraw from voluntary commitment. There was no indication in that case that the involuntary commitment was treated differently on account of its genesis from a prior voluntary commitment.

ate treatment. 50 P.S. §§ 7302(a)(1), 7302(a)(2). When, as here, the prospective involuntary committee is already lawfully detained for voluntary commitment, an examination for involuntary commitment may be conducted upon written certification by a physician stating the need for such examination, 50 P.S. § 7302(a), so long as the examination is completed before the delay period prior to the expiration of the date for release from voluntary commitment. If that time period expired, further detention for examination would then have to be grounded upon authority properly derived under the warrant or emergency provisions.

As soon as the justification for detention shifts from the prior voluntary commitment to involuntary commitment, appellant must be provided "reasonable use of the telephone," and the county administrator or director of the facility must request the names of parties to be told of, and kept informed regarding, the patient's status. The administrator or director then has an obligation to inform those persons of the patient's whereabouts, how and when the patient may be contacted, and how information may be obtained concerning the patient during involuntary commitment. Action must also be taken to ensure that the needs of the patient's dependants are met and that the patient's property is made secure. *See* P.S. § 7302(c). Because the provisions of § 7302(c) are to apply "upon arrival at the facility" and the required examination is to occur "within two hours of arrival," I find that "reasonable use of the telephone must be permitted *before* the examination in a situation involving a conversion from voluntary to involuntary commitment status." *Compare* 50 P.S. § 7302(b) *and* 50 P.S. § 7302(c).

Voluntary civil commitment may be approved for anyone "in need of treatment" providing informed consent as to the conditions of commitment is given by the patient. *See* 50 P.S. § 7201; 50 P.S. § 7203. Involuntary civil commitment, on the other hand, may only be based upcn the examining physician's findings that the patient's severe mental disability poses a clear and present danger of harm to himself or

others. 50 P.S. § 7301(a). The physician must make a written record of the examination and his or her findings, which is subject to criminal penalties for making false unsworn statements to authorities, and which must be transmitted to the county mental health administrator. 50 P.S. § 7302(b); 50 P.S. § 7110. If the physician determines that the patient needs involuntary treatment authorized by law, then the patient may be detained for treatment for a period *not more than* 120 hours, unless the patient consents to voluntary commitment or certification for extended treatment is received. 50 P.S. § 7302(d).

The majority has expressed concern that if a facility utilized their outside extreme authorization under the provisions of 50 P.S. § 7201 *et seq.* and 50 P.S. §§ 7301 *et seq.*, a patient seeking to withdraw from voluntary commitment could be detained for as long as 8 days (72 hours plus 120 hours) without judicial review of the commitment. The majority concludes that this could not have been intended by the legislature, and so they engraft upon the statutes a provision the legislature did not see fit to provide itself. This we may not do. *See Commonwealth v. Revtai*, 516 Pa. 53, 64, 532 A.2d 1, 11 (1987). Though the majority's concern for the liberty interests of the individual detained are unquestionably legitimate and laudable, I believe they are misdirected.

A significant omission is made in the majority's analysis regarding the limits imposed by statute upon the duration of involuntary commitment for "emergency examination and treatment." Specifically, the majority fail to consider the effect of the requirement that application for extended treatment be made "whenever the facility determines that the need for emergency treatment is likely to extend beyond 120 hours." 50 P.S. § 7303(a). Given the patient's liberty interests at stake, I would construe "whenever" to mean "as soon as." This construction is supported by the statement in the next sentence of that provision that the application is to be filed in the Court of Common Pleas "forthwith." 50 P.S. § 7303(a).

So construed, the provision provides an effective limitation on potential delay in release or review in cases involving conversion from voluntary commitment to involuntary commitment. An application for extended treatment triggers appointment of counsel and a requirement that an informal hearing be conducted by a judge or mental health review officer "within 24 hours." 50 P.S. § 7303(b).

When a facility finds it necessary to seek conversion of voluntary commitment to involuntary commitment, I believe it is safe to assume that they will ordinarily do so in situations where they will have determined that there is at least a "likelihood" that detention beyond 120 hours *may* be needed. In absence of *clear and convincing evidence* that the examining physician reasonably believed that it was *unlikely* that detention for involuntary treatment beyond 120 hours would be needed, I would construe the mandate of 50 P.S. § 7303(a) to require an application for extended treatment be filed "forthwith" (immediately) upon conversion of a patient's status from voluntary commitment to involuntary commitment.

I believe the foregoing construction of the various provisions of the Mental Health Procedure Act is fully consistent with the legislature's expressed intent, and the statutory rules of construction. 50 P.S. § 7102; 1 Pa.C.S.A. §§ 1901 *et seq.* So construed, I find that the majority's concerns are adequately addressed; and, more to the point, the mandates of substantive and procedural due process are fully met with regard to the legitimate liberty interests of patients involuntarily committed. Indeed, in the vast majority of cases the above construction of the applicable provisions would require either: release within *no more than* 72 hours after notice of intent to withdraw from voluntary commitment; or, provision of counsel and an informal hearing within *no more than* 96 hours after notice of intent to withdraw from voluntary commitment. Furthermore, I note that while we must ensure that commitment procedures are not manipulated to improperly delay release or the review hearing, we must also give due deference to the

legislature's evaluation of the achievable time limits which may be imposed on mental health authorities given the staff and resources available, and the demands which the substantive and procedural mandates of the Mental Health Procedures Act impose upon these authorities.

While I do not construe the applicable procedural mandates the same way as the majority in this case, I join their conclusion that J.S. was improperly denied a timely informal hearing in accordance with 50 P.S. §§ 7303(a), 7303(b). The lawful delay period for J.S.'s release from voluntary commitment expired on Saturday morning, October 3, 1987, 72 hours after she had given written notice of her intent to withdraw from voluntary treatment. On October 1, 1987, after receiving notice from J.S., of her intent to withdraw from voluntary commitment, the facility revived R.S.'s dormant application for examination of J.S. and conducted the examination required by 50 P.S. § 7302 for involuntary commitment. A review hearing was not held, however, until 4 days later on October 5, 1987. I find the delay between completion of the physician's examination and the convening of J.S.'s review hearing to have been improper. As soon as J.S.'s examination was completed and her status was converted to *involuntary* commitment, an application for extended treatment was required under 50 P.S. § 7303(a). Had this been done, an informal hearing would have been conducted on Friday, October 2, 1987 or Saturday, October 3, 1987,[3] rather than Monday, October 5, 1987.[4]

3. The record is not clear as to when the examination was completed; moreover, even a requirement that an application for extended treatment be filed "forthwith" would involve some allowance for administrative processing. Consequently, I note that a delay in conducting the informal hearing until Saturday, October 3, 1987 might not have been unreasonable.

4. I note that I would *not* exclude weekends from the time requirements for conducting an informal hearing before a judge or mental health review officer. Given the liberty interests at stake I would not *imply* authorization of *automatic* 48 hour extensions of confinement on that basis. Weekend *informal* hearings must therefore be required in such cases. The fact that courts are closed for *formal* hearings during weekends in no way affects that requirement. Apparently, however, the fact that common pleas courts are closed may affect the

Thus, I concur in the result of the majority's conclusion that a timely hearing was not held.

I cannot agree, however, that discharge of a patient, without regard to the patient's need for treatment or society's need for protection, is the required or appropriate remedy in such cases. I do not construe the provisions of the Mental Health Procedures Act to require such a remedy.

When a timely hearing is not held, court action may certainly be instituted seeking *habeas corpus* or *mandamus* relief to compel an *immediate* hearing. *See* 50 P.S. § 7113. However, release of a patient without regard to the patient's need for treatment and/or restraint would in no way serve the present and future interests of the patient or the community, nor would it return to the patient the hours the patient was *improperly* detained prior to the required hearing.

Even in a case where the failure to conduct a timely hearing under the Act was grossly negligent, or intentionally and improperly motivated, I would not find *automatic* release appropriate. Rather, I would direct that an *immediate* hearing be conducted, and leave determination of an appropriate sanction or penalty for the responsible parties and/or the amount of compensatory relief due to the patient for the abuse of commitment proceedings, to appropriate collateral criminal or civil proceedings, *e.g.* prosecution for unlawful restraint or a civil suit for false arrest and/or a violation for civil rights. *See* 50 P.S. §§ 7112, 7114.[5]

"filing" of an application for extended treatment. *See* 50 P.S. § 7303(a); 1 Pa.C.S.A. § 1908; Pa.R.C.P. 106.

5. In *In re Condry, supra,* a panel of this Court held that the failure to include a description of treatment in an order for extended treatment required that the order be vacated. 450 A.2d at 139. The panel did not face a question as to whether the patient was to be discharged as a result of that defect, or whether a new order or a new proceedings would be sufficient because the involuntary commitment order had expired by its own terms *before* the appeal was decided.

In *In re S.O.,* 342 Pa.Super 215, 492 A.2d 727 (1985), a panel of this Court upheld two involuntary commitment orders despite several procedural errors, including improper delays of 50 and 36 days

*The mental health review officer here specifically held that J.S. was severely mentally disabled within the meaning of the Act and in need of involuntary treatment,* yet nonetheless ordered her release based upon the improper delay in providing J.S. the informal hearing to which she was entitled. Initially, the trial court affirmed the mental health review officer's decision, and J.S. was in fact released. On timely reconsideration, however, the trial court granted the hospital's post-verdict motions challenging that disposition, and remanded for further proceedings. Essentially, the trial court held that the disposition on procedural grounds was improper, and that the case should be reconsidered by the mental health review officer on its merits. I would affirm the trial court's order in that limited respect, and in that respect dissent from the majority opinion in this case.

However, J.S. has remained on release from commitment during the pendency of these proceedings, apparently without any serious incidents warranting her re-confinement. Fortunately, out-patient services proved adequate despite both the examining physician's and the mental health review officer's negative assessment of the adequacy of such an alternative to involuntary commitment. The Mental Health Procedures Act provides in numerous provisions

respectively in conducting the *de novo* review required under 50 P.S. § 7109(b). The panel reasoned:

We cannot, in exercising our paternalistic impulses, forget that due process requirements must be met to assure compliance with legal standards related to the restriction of liberty. We do not mean to denigrate good intentions, but only to make clear that more is required than a sincere desire to help. Assistance must be rendered properly, or in a larger sense, this carefully balanced system will fail.

On the other hand, this same restraint of liberty which prevents us from shouting "fire" in a crowded theater, prohibits as well the exercise of "liberty" by those to whom it is in fact anathema, spelling certain, although possibly slow, destruction. It is this consideration which must affect most strongly our determination of appropriate relief.

492 A.2d at 737. I find this reasoning persuasive, as well as supportive of the general premise which I urge above regarding the choice of an appropriate remedy when a timely hearing is not conducted as required.

throughout that *involuntary detention must end as soon as less restrictive means become adequate. See* 50 P.S. §§ 7102, 7107, 7108, 7302(d), 7303(a), 7303(h), 7304(g)(3). Given the *extreme* staleness of the grounds upon which the original involuntary commitment was based, and the Mental Health Review Officer's initial findings indicating a need for involuntary commitment were predicated, I would find that detention under the prior examination and findings could no longer be deemed appropriate, and that a new examination under 50 P.S. § 7302(b) would be required before J.S. could be recommited.[6]

Hence, I concur in part and dissent in part.

---

**6.** I agree with the majority, nonetheless, that this appeal has not become moot. Such an approach would quite likely insulate any error in such proceedings (negligent, reckless, or intentional) from appellate review. *See In re Condry, supra,* 450 A.2d at 136. Hence, review is appropriate even though the affirmance of the order would not directly affect J.S.'s liberty under the views espoused in this opinion.