J-S31020-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: W.A. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: W.A. | No. 56 MDA 2015 |

Appeal from the Order entered December 24, 2014,
in the Court of Common Pleas of Centre County,
Civil Division, at No(s): 2006-660

BEFORE: BENDER, P.J.E., ALLEN, and WECHT, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED JUNE 01, 2015**

W.A. ("Appellant") appeals from the trial court's order denying his petition for review of certification for involuntary inpatient mental health treatment. We affirm.

Relative to this appeal, the trial court set forth the following background:

> Appellant is currently serving a sentence of five to twenty-three years' imprisonment at SCI Rockview in connection with a guilty plea to arson, simple assault and terroristic threats. On November 13, 2014, Appellant was committed for a psychiatric evaluation under Section 302 of the Mental Health Procedures Act, [("MHPA"),] and was examined on the same date by Carol Eidsvoog, M.D. It was noted that he was very dehydrated requiring medical intervention and had only slept about four hours in the previous six days. He was shouting and was focused on various delusions. His hygiene was poor and he was urinating throughout his living quarters.
>
> On November 14, 2014, an Application for Extended Involuntary Treatment under Section 303 of the MHPA was filed. Dr. Eidsvoog noted her findings that Appellant had a history of Bipolar Disorder with Mania and was non-compliant with medications. He was manic at the time of her examination and

exhibited pressured, nonsensical speech, and made incoherent statements. He was throwing feces and urine and had visibly lost weight.

On December 4, 2014, SCI Rockview filed a petition pursuant to Section 304 of the MHPA seeking to extend Appellant's period of involuntary treatment for an additional ninety days. At the time the petition was filed, Appellant was still receiving treatment pursuant to the Section 303 commitment ordered on November 20, 2014. On December 5, 2014, a hearing was held on the Section 304 extension before Sonja F. Napier, Mental Health Review Officer. Following the hearing, on December 5, 2014, Hearing Officer Napier filed a report recommending that the involuntary commitment of Appellant continue. [On December 11, 2014, Appellant filed a writ of *habeas corpus* seeking release from involuntary psychiatric treatment, and arguing that his Section 303 commitment had expired and that the trial court had not abided by the Section 304's requirement to issue a commitment decision by December 7, 2014.] On December 11, 201[4], this Court entered an Order directing that Appellant be involuntarily committed at SCI Rockview for up to ninety days. [On December 16, 2014, the trial court issued an order denying Appellant's writ of *habeas corpus*.] Appellant filed a Petition for Review of Certification on December 22, 201[4], which this Court denied on December 24, 2014. On January 2, 2015, Appellant filed this appeal.

Trial Court Opinion, 2/12/15, at 1-2. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant seeks our review of the following issue:

I.   Whether the lower court was required to discharge petitioner following its failure to abide by its statutory requirement to render a decision within 48 hours of the close of the evidence?

Appellant's Brief at 5.

We recognize that Appellant's issue is a question of law regarding which our standard of review is *de novo* and our scope of review is plenary. ***See In re Interest of W.A.***, 91 A.3d 702, 704 (Pa. Super. 2014).

In rebutting Appellant's claim of error, the trial court explained:

> In this case, the commitment extension hearing concluded on Friday, December 5, 2014. The decision was due on Sunday[, December 7, 2014,] but was not filed until the following Thursday, December 11, 2014. Thus, more than forty-eight hours elapsed between the close of evidence and entry of the decision. However, the Court believes this error was the kind of minor breach that the Superior Court has held does not invalidate an involuntary commitment order.
>
> The Superior Court has distinguished between provisions of the Act that directly affect due process and those that do not, recognizing that the Act "attempts to strike a balance between the state's valid interest in imposing and providing mental health treatment and the individual patient's rights." [Commonwealth v.] Helms, [506 A.2d 1384,] 1389 [(Pa. Super. 1986)]; In re S.L.W., 698 A.2d 90 (Pa. Super. 1997). []
>
> ***
>
> In this case, the [four] day delay in filing the decision did not deprive Appellant of the protection of the Act's due process rights or liberty interests. Furthermore, to find otherwise would have deprived him of necessary mental health treatment. He was afforded notice and a meaningful opportunity to be heard as well as appointed counsel who was present at the hearing and cross-examined Dr. Eidsvoog. The late filing of the decision did not prejudice his rights, and to invalidate the order on that basis would contravene the Act's purpose of securing help for those who need mental health treatment.

Trial Court Opinion, 2/12/15, at 5-7. Based on our review of the record and applicable jurisprudence, we agree with the trial court.

Initially, we note that the MHPA, 50 P.S. § 7101 *et seq*, provides:

- 3 -

**§ 7304. Court-ordered involuntary treatment not to exceed ninety days**

**(a) Persons for Whom Application May be Made.**--(1) A person who is severely mentally disabled and in need of treatment, … may be made subject to court-ordered involuntary treatment upon a determination of clear and present danger under section 301(b)(1) (serious bodily harm to others), or section 301(b)(2)(i) (inability to care for himself, creating a danger of death or serious harm to himself), or 301(b)(2)(ii) (attempted suicide), or 301(b)(2)(iii) (self-mutilation).

(2) Where a petition is filed for a person already subject to involuntary treatment, it shall be sufficient to represent, and upon hearing to reestablish, that the conduct originally required by section 301 in fact occurred, and that his condition continues to evidence a clear and present danger to himself or others.  In such event, it shall not be necessary to show the reoccurrence of dangerous conduct, either harmful or debilitating, within the past 30 days.

**(b) Procedures for Initiating Court-ordered Involuntary Treatment for Persons Already Subject to Involuntary Treatment.**--(1) Petition for court-ordered involuntary treatment for persons already subject to treatment under sections 303, 304 and 305 may be made by the county administrator or the director of the facility to the court of common pleas.

\*\*\*

(5) Treatment shall be permitted to be maintained pending the determination of the petition.

**(e) Hearings of Petition for Court-order Involuntary Treatment.**—A hearing on a petition for court-ordered involuntary treatment shall be conducted according to the following:

\*\*\*

 (7) A decision shall be rendered within 48 hours after the close of evidence.

50 P.S. § 7304 (a)(2), (b)(5), and (e)(7) (internal footnotes omitted).

In affirming a prior untimely Section 304 commitment order concerning Appellant, we reasoned:

> Because the hearing before Mental Health Review Officer Napier concluded on September 25, 2013, which was a Wednesday, a strict interpretation of subsection (e) required the decision by the trial court to be filed by September 27, a Friday. Although the order was not filed timely, because of the intervening weekend, it was filed on Monday, September 30, the next business day.
>
> [Appellant] contends that this technical violation requires that the commitment order be reversed and that he be discharged. This Court has categorically rejected a mechanical interpretation of the MHPA. *See In re S.L.W.*, 698 A.2d 90 (Pa. Super. 1997).
>
> In *In re S.L.W.,* a consolidated appeal, the panel considered a pair of challenges arguing that technical violations involving, among other things, delays in adhering to the timeframe of the MHPA, required vacating of the commitment orders. The panel rejected the arguments that advocated a mechanical application of the MHPA's statutory provisions. The panel explained that
>
>> [o]ne of the goals of the Mental Health Procedures Act is to protect the due process interests of the patient who loses his or her liberty by being committed to an institution. Protection of those interests requires fundamental fairness to the patient and respect for the patient's dignity and individuality. Achieving this standard requires common sense application of statutory provisions, not mechanical application. A distinction must be made between those standards that directly affect the due process and liberty interests of the patient and those that do not.
>
> *Id.,* at 94. Moreover, the panel further instructed that "[i]n applying the [MHPA] we must take a balanced approach and remain mindful of the patient's due process and liberty interests, while at the same time permitting the mental health system to provide proper treatment to those involuntarily committed to its care." *Id.* (footnote omitted).

\*\*\*

- 5 -

Here, [Appellant] has not identified how his due process rights or liberty interests were violated other than the late filing of the order by the trial court. Furthermore, we note that, at the time the Section 304 commitment order was entered, albeit after a one-weekend delay, [Appellant] was still receiving treatment pursuant to the Section 303, 20–day commitment order entered on September 12, 2013. [Appellant] suffers from bipolar disorder and mania and, as a result, poses a clear and present danger to himself and others. Thus, [Appellant] remains a severely mentally disabled individual in need of continued involuntary inpatient treatment. The lack of treatment could lead to serious physical debilitation or death.

The involuntary civil commitment of mentally ill persons constitutes a deprivation of liberty interests, and to justify this deprivation the procedures must satisfy due process protections. *See* 50 P.S. § 7102 ("The provisions of this act shall be interpreted in conformity with the principles of due process to make voluntary and involuntary treatment available where the need is great and its absence could result in serious harm to the mentally ill person or to others."). *See also In re R.D.,* 739 A.2d 548, 554 (Pa. Super. 1999). However,

> [d]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. [D]ue process is flexible and calls for such procedural protections as the particular situation demands.

*Id.* (quoting *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). []

[W]e refuse to vacate [Appellant's] Section 304 commitment on the technical grounds he asserts as it is evident that [Appellant's] due process and liberty interests were not affected by the short delay and his continued needed commitment.

*In re Interest of W.A.*, 91 A.3d at 704-705 (internal footnote omitted).

Instantly, as in his prior appeal, the record indicates that Appellant "remains a severely mentally disabled individual in need of continued involuntary inpatient treatment [and] [t]he lack of treatment could lead to

serious physical debilitation or death." *Id.* at 705. Indeed, during Appellant's Section 304 hearing on December 5, 2014, Dr. Eidsvoog testified that Appellant is "impulsive, intrusive, [and] noncompliant … [and] tends to be loud, argumentative and could easily get into fights and be assaulted or assault others." N.T., 12/5/14, at 7-8. Dr. Eidsvoog opined that Appellant could not "provide for his own basic needs, including health, safety, welfare and nutrition, without the care and assistance of others[.]" *Id.* at 7. Dr. Eidsvoog testified that since Appellant "came in he's rarely showered … his cell is filthy with spit, garbage, [and] body secretions all over the cell." *Id.* Dr. Eidsvoog stated that "without the [involuntary mental health] treatment [she was] seeking [for Appellant,] there would be a reasonable probability of death, disability or serious physical debilitation within 30 days[.]" *Id.* The record reflects that Appellant was unable to "control himself" and to remain quiet during the testimony "even though he'd been instructed previously by [Dr. Eidsvoog] … to be quiet until he had his turn to talk[.]" *Id.* at 8.

Dr. Eidsvoog confirmed that Appellant had "previously been subject to a [Section] 303 proceeding[.]" *Id.* at 9. Dr. Eidsvoog denied that Appellant had "been compliant with treatment and/or medication" since his Section 303 commitment. *Id.* Dr. Eidsvoog testified that Appellant was noncompliant with his mood stabilizing medications and that she had not "been able to get labs drawn consistently because of his refusal." *Id.* at 10. Dr. Eidsvoog opined that Appellant was "not where his baseline is, because I know him fairly well from previous admissions." *Id.* at 11. She stated that

Appellant could "definitely" … "recapture more function … with … additional treatment" under a Section 304 commitment. *Id.*

Further, Dr. Eidsvoog testified that she was "seeking a [Section] 304 commitment to be able to keep [Appellant] here and make further medication adjustments" that would help Appellant "recapture more function." *Id.* Dr. Eidsvoog explained "we just recently started [Appellant] on Risperdal Consta, because he had adverse reactions to the Abilify. And … I need to let the Abilify get out of his system and the Risperdal to start working" in the "inpatient environment[.]" *Id.* Dr. Eidsvoog testified that the inpatient environment is the "least restrictive environment for [Appellant] to receive the necessary and appropriate treatment[.]" *Id.* Dr. Eidsvoog additionally confirmed that Appellant would receive a "therapy component to his treatment" during the requested Section 304 commitment. *Id.* Dr. Eidsvoog explained "once [Appellant] clears enough so he can have a give-and-take conversation [Appellant will] be offered psychoeducation, social skills training, working on … communication skills, listening skills. [] But right now he is incoherent and rambling and … I doubt he hears anything." *Id.*

As noted above, in Appellant's prior appeal, we affirmed the trial court's order regarding Appellant's Section 304 commitment, which was filed 3 days after the 48 hour deadline. In doing so, we recognized that "due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *In re Interest of*

- 8 -

*W.A., supra,* at 705 (internal citation omitted). Here, we consider that the filing delay was similarly short, and the MHPA provides that "[t]reatment shall be permitted to be maintained pending the determination of the petition." 50 P.S. § 7304 (b)(5). Moreover, we are mindful that Appellant has a great need, as reflected by the record, for continued involuntary psychiatric treatment, without which Appellant poses a risk of harm to himself or others. *See In re R.D.,* 739 A.2d 548, 555 (Pa. Super. 1999) *citing* Mental Health Procedures Act, § 102 ("The legislature's purpose in enacting the Mental Health Procedures Act was 'to assure the availability of adequate treatment to persons who are mentally ill' and 'to make voluntary and involuntary treatment available where the need is great and its absence could result in serious harm to the mentally ill person or to others.'"). This Court explained:

> We must be mindful that the fundamental purpose of any [due process procedural] protections we apply is to minimize the risk of erroneous decisions [and that] [t]o discern the demands of due process, we must adjudge the necessity of the protection sought in view of the nature and purpose of the underlying deprivation and the potential consequences in the absence of that protection.

*R.D., supra,* at 554, *citing* ***Addington v. Texas,*** 441 U.S. 418, 425-427 (1979). Accordingly, applying the rationale espoused in the foregoing authorities, we affirm the trial court's Section 304 commitment order. ***See In re Interest of W.A., supra***, at 705 ("We refuse to vacate [Appellant's] Section 304 commitment on the technical grounds he asserts as it is evident

that [Appellant's] due process and liberty interests were not affected by the short delay and his continued needed commitment.").

Order affirmed. Jurisdiction relinquished.

PJE Bender joins the Memorandum.

Judge Wecht files a Concurring Statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/1/2015