**In re S.L.W.**

**In re H.I.D., a/k/a H.D.**

**Appeal of H.D.**

Superior Court of Pennsylvania.

Argued Feb. 27, 1997.

Filed July 25, 1997.

Gary F. Selway, Greensburg, for appellants.

Debra M. Nicholson, Greensburg, for Westmoreland County Solicitor, participating party.

Gerald J. Yanity, Latrobe, for Latrobe Area Hospital, participating party.

Before BECK, FORD ELLIOTT and HESTER, JJ.

BECK, Judge:

These consolidated matters require us to consider the technical requirements of the Mental Health Procedures Act, 50 P.S. § 7101, *et seq.* ("MHPA" or "the Act"), specifically its provisions regarding involuntary commitment and treatment.

While these two cases are unrelated, they share not only the same counsel but the same general complaint, namely, that the technical procedures mandated by the Act were not strictly adhered to and, as a result, the orders of commitment must be vacated and the records of commitment expunged.

We begin with a brief summary of the relevant sections of the MHPA. Among other things, the Act provides that an individual can be made subject to involuntary emergency commitment and examination in the event a physician determines that the person is severely mentally disabled and in need of emergency treatment. *See* 50 P.S. § 7302. Section 302 treatment, as it is often called, cannot exceed five days. The definition of a severe mental disability is set forth with particularity in the Act. *See* 50 P.S. § 7301.

In the event treatment is necessary for a period longer than five days, the Act provides a procedure for extended treatment. *See* 50 P.S. § 7303. Such extended treatment, commonly referred to as § 303 treatment, requires court intervention in the form of a petition filed in the court of common pleas followed by a hearing before a judge or mental health review officer ("MHRO"). At the conclusion of the hearing, the MHRO either certifies that the individual is severely mentally disabled and in need of continued involuntary treatment or, in the absence of such a certification, orders the facility director to discharge the individual. *See* 50 P.S. § 7303(c).

If a certification for extended treatment is made, its contents must conform with statutory provisions. *See* 50 P.S. § 7303(d). Further, the certification must be filed with the director of the treating facility and a copy served on the individual, his or her counsel and any other relevant parties. *See* 50 P.S. § 7303(e). Section 303 treatment cannot exceed twenty days.

Further involuntary treatment, not to exceed ninety days, is permissible, but is subject to additional procedural rules set forth with particularity in the Act. *See* 50 P.S. § 7304.

■ Despite the fact that MHPA matters frequently appear moot due to the lapse of time between an involuntary commitment and appellate disposition, our courts consistently have held that a live controversy exists in these cases. We recognize that an important liberty interest is at stake in all involuntary commitments and by their nature, most commitment orders expire prior to appellate review. *See In re Condry*, 304 Pa.Super.

131, 450 A.2d 136, 137 (1982). Since a finding of mootness would allow such claims to go unchallenged in most, if not all, cases, we continue to hear these matters and, where the facts allow, we have authority to vacate a commitment order and direct that the record be expunged. *See In re S.O.*, 342 Pa.Super. 215, 492 A.2d 727 (1985).

■ The specific due process protections provided for in the Act are strictly construed; a violation of the Act's provisions requires that the order of commitment be vacated. *See In re Chiumento*, 455 Pa.Super. 376, 688 A.2d 217 (1997) (order vacated due to delay in § 303 hearing); *Condry, supra* (order vacated where treatment plan not adequately described).

■ S.L.W. alleges several MHPA violations. Her first complaint is that the county failed to file timely the § 303 certification on the facility at which she was involuntarily committed. In her brief, S.L.W. relies on § 302(d)(2), which provides that an individual committed under § 302 must be discharged within five days unless a § 303 certification is filed pursuant to the Act, and § 303(e), which provides that the certification "shall be filed with the director of the facility."

S.L.W. was involuntarily committed under § 302 on July 27, 1996 at approximately 9:45 PM. A § 303 petition was filed on July 29, 1996 and a hearing before a MHRO took place the following day. On August 1, 1996, a § 303 certification was filed with the prothonotary; however, the certification was not filed with Latrobe Hospital, the facility to which S.L.W. was committed, on that date. Instead, the certification was mailed to the hospital on August 5, 1996 and received the following day.

Upon review, the trial court found that any technical violations of the Act were "slight deviations from the specific requirements [of the Act that were] not sufficient to justify discharge of the patient." We agree.

■ Even if we were to interpret the Act as requiring the filing of the § 303 certification with the facility, as opposed to the court, within five days, we would not be convinced that such a minor breach of the Act's provi-

sions requires us to vacate S.L.W.'s order of commitment. As noted by Latrobe Hospital in its brief, it has not been prejudiced by the timing of its receipt of the certification and neither has S.L.W. At all times during these proceedings S.L.W., a lawyer herself, was represented by an attorney. Both patient and counsel participated in the hearing and were made aware of all decisions as they were made. There was no reversible error in the manner in which the certification was filed.[1]

■ S.L.W. also claims that the § 303 certification was inadequate because it failed to: 1) explain the treatment to be provided; 2) explain its (the certification's) effect; and 3) inform S.L.W. of her continued right to counsel. Relying on *Condry, supra,* S.L.W. claims that omission of *any* MHPA requirement mandates discharge of a patient.

Our review of the certification leads us to conclude that it is adequate under the Act. With respect to an explanation of the treatment to be provided, we observe that incorporation of expert and medical testimony is appropriate and has been held to satisfy the Act. · *See In Re L.M.P.,* 413 Pa.Super. 18, 604 A.2d 712, *appeal denied,* 531 Pa. 661, 613 A.2d 1210 (1992). Further, we find it difficult to understand S.L.W.'s claims regarding notice of the certification's effect and her right to counsel. She was represented by counsel at all stages of these proceedings and continues to be represented by the same able attorney in this appeal. We cannot find reversible error under these circumstances.

S.L.W.'s final argument is that she did not receive the required publications regarding her rights upon commitment. The record reflects that S.L.W. received some of the material to which she was entitled and given access to other material. In addition, it ap-

pears that one of the booklets mentioned in the Act simply does not exist. Again, we note that S.L.W. represented at all times by an attorney who, it is clear from the record, is an expert in the rights of persons committed under the Act. We find no error in the proceedings regarding S.L.W. that cause us to vacate the order of commitment.[2]

Appellant H.D.'s claims prompt the same result. H.D. first argues that Westmoreland County should have discharged her at the end of her § 303 treatment period because it failed to satisfy the filing requirements for additional extended treatment under §§ 303 and 304.

A § 303 certification committing H.D. for twenty days of treatment was filed on July 16, 1996. Seventeen days later, on August 2, 1996, the county filed a § 304 petition seeking an additional ninety days of treatment. A hearing on the § 304 petition was held on August 6, 1996 and on August 15, 1996 an order for involuntary treatment under § 304 was issued by the court.

■ H.D. argues that the county violated the Act which explicitly provides that a person shall be discharged within twenty days of the filing of a § 303 certification unless the court orders involuntary treatment pursuant to § 304. *See* 50 P.S. § 7303(h). Since the § 304 order was not entered until thirty one days after the § 303 certification, appellant insists that she should have been discharged at the expiration of the twenty day treatment period. We cannot agree.

While § 303 has a time limit of twenty days, § 304 provides that "treatment shall be permitted to be maintained pending the determination of a § 304 petition." *See* 50 P.S. § 7304(b)(5). This is what occurred in H.D.'s case. Further, upon review of the § 304

---

1. S.L.W. also complains that she and her counsel should have been served with the certification within the five day period, but were not. Even if we were to construe the Act as mandating service on all interested parties within five days, we would not vacate the order of commitment here. S.L.W. and her lawyer attended the § 303 hearing and knew at its conclusion that the MHRO intended to certify that S.L.W. was in need of further treatment.

2. We also grant S.L.W.'s Motion to Strike portions of the county's brief. The challenged excerpts concern a Writ of Habeas Corpus apparently filed by S.L.W. and relating to her treatment in the Westmoreland County mental health system. As noted by S.L.W., these proceedings are not part of the certified record before this court. Since we have not relied in any manner on the county's assertions regarding the Habeas action, S.L.W. has suffered no prejudice.

hearing transcript, it appears that the delay was due in part to H.D.'s son, who opposed his mother's commitment and requested additional time to seek alternative living arrangements for her. The MHRO attempted to work with son and allowed him a period of time to find a place that would provide H.D. with the care and supervision she needed. When such accommodations could not be found, the court order was issued.

 We likewise reject H.D.'s claims regarding other violations of the Act, many of which mirror those complaints made by S.L.W. Specifically, we find that that service of the certification and order were proper,[3] that the certification contained the required contents, and that the appropriate parties were notified.[4] Like S.L.W., H.D. requests a tortured reading of the MHPA in order to convert good faith compliance by county officials into rampant disregard for individual rights.

 One of the goals of the MHPA is to protect the due process interests of the patient who loses his or her liberty by being committed to an institution. Protection of those interests requires fundamental fairness to the patient and respect for the patient's dignity and individuality. Achieving this standard requires common sense application of statutory provisions, not mechanical application. A distinction must be made between those standards that directly affect the due process and liberty interests of the patient and those that do not.

3. Apparently Allegheny Valley Hospital does not give involuntarily committed patients personal copies of their certifications/orders. Instead, the documents are read to the patient, a copy is kept in the patient's chart and the patient is allowed access to the documents upon request. The purpose of this procedure is to safeguard the legal papers of each patient. We find this procedure reasonable and adequate under the Act.

Our resolution of this issue disposes of one of H.D.'s other claims, that is, that the county did not have jurisdiction over her because she was not properly served. The fact that hospital personnel read the contents of the certification to H.D. and made the document available to her satisfies the service requirement and defeats the jurisdictional argument.

4. H.D. also alleges that her initial commitment under § 302 was improper because her state-

Equally important under the MHPA is a design to permit proper treatment of a patient to improve his or her mental stability. Mechanical adherence to rules that do not directly affect the patient's due process or liberty interests may cause the patient's premature discharge from a mental health facility, thereby depriving the patient of necessary treatment.

 In applying the Act we must take a balanced approach and remain mindful of the patient's due process and liberty interests, while at the same time permitting the mental health system to provide proper treatment to those involuntarily committed to its care.[5] Upon review of the Act's provisions and with particular attention to the records in these cases, we refuse to vacate S.L.W. and H.D.'s orders of commitment on the technical grounds they assert.

Orders affirmed.

ments to emergency personnel about hearing sounds in her head and planning to jump off a bridge were merely suicidal "ideas" and did not establish suicidal intent. After a thorough review of the record, we refuse to second-guess the conclusion of the emergency medical and mental health professionals that H.D. presented a clear and present danger of harm to herself.

5. The *Chiumento* court observed that "the provisions of [the Act] shall be interpreted *in conformity with the principles of due process* to make voluntary and involuntary treatment available where the need is great and its absence could result in serious harm to the mentally ill person or to others." *Chiumento, supra* 688 A.2d at 220 (quoting 50 P.S. § 7102).