### Appeal of Philadelphia Law Department.

Superior Court of Pennsylvania.

Submitted Jan. 4, 1999.

Filed Oct. 14, 1999.

John W. Packel, Asst. Public Defender, Philadelphia, for J.S.

Stephanie J. Marsh, Asst. County Solicitor, Philadelphia, for Philadelphia Law Department.

Before HUDOCK, J., and CERCONE, President Judge Emeritus, and BECK, J.

CERCONE, President Judge Emeritus:

¶ 1 The question before us for resolution is as follows: does the failure of the court below to promptly render a decision when reviewing the finding of a mental health Master compel J.S.'s [1] involuntary civil commitment to be vacated and his hospital records to be expunged? Essentially there are three types of hearings conducted under the provisions of the Mental Health Procedures Act [2] of 1976, July 9, P.L. 817, 143, § 7303 hearing (involuntary commitments up to twenty (20) days), § 7304 hearing (involuntary commitments up to ninety (90) days), and, § 7305

---

**1.** Due to privacy interests involved, we shall refer to the patient involved as J.S.

**2.** 50 P.S. Section 7101 *et. seq.*

hearing (involuntary commitments up to 180 days).[3]

¶2 The quandary that exists here for our question is posed with reference to § 7303 as to the time within which a judicial determination must be made as to the detention or release of a mental patient. The Mental Health Procedures Act (MHPA) provides that under § 7304, the Judge or the mental health review officer must decide within forty-eight (48) hours of the Master's decision whether to continue the patient's stay in the hospital or to release him or her from the hospital. However, § 7303 has no time *specifically* set forth within which a judicial review must be made as to the time of stay or release. Since J.S. was committed under the twenty (20) day stay provision, the question here is whether there is a need to determine what time is fair within which a judge must make a review determination of the patient's status, either that he be detained or otherwise released, especially when his twenty (20) day stay is such a short term.[4]

¶3 We need not stress how important it is for both the appellee and for the patient to know, as soon as possible, what the fate of the patient is to be, stay or release, considering the short stay of detention. On October 6, 1997, J.S. was involuntarily committed for a period not to exceed twenty (20) days. J.S. petitioned on October 14, 1997, pursuant to the MHPA, 50 P.S. §§ 7109 & 7303(g), for a statutory review of the Master's commitment. The Honorable and highly regarded Judge Alex Bonavitacola promptly scheduled and held a hearing on October 16, 1997, within the requisite seventy-two (72) hours, to review the findings of the Master as required by the MHPA, 50 P.S.

§§ 7109 & 7303(g). However, the Judge's decision regarding the findings of the Master was not filed until October 31, 1997, fifteen (15) days after the scheduled hearing. By this time, J.S.'s twenty (20) day commitment had expired.

¶4 To emphasize the importance of having issues involving involuntary commitments resolved promptly, we have held repeatedly that a judge's failure to hold the review hearing within seventy-two (72) hours requires that the commitment be vacated and the hospital records of the commitment be expunged. *See In Re: J.K.*, 407 Pa.Super. 559, 595 A.2d 1287 (1991); *In Re: S.O.*, 342 Pa.Super. 215, 492 A.2d 727 (1985). We refer to the above cases to emphasize that if it is so important to have a review hearing to be held promptly, *i.e.*, 72 hours, it is just as important to have a prompt judicial decision regarding the Master's findings thereafter. Although there is no time provided by legislation in § 7303 within which a judge must file his decision after the Master's report, there is no impediment in the statute finding that under the reasonable purpose of the MHPA that a judicial decision should be made in as timely a period as set forth in § 7304, to-wit, within forty-eight (48) hours.

¶5 There is precedent in our Court setting forth the reasonableness of interpretation fairly and equitably for language of a statute where a reasonable question remains as to its purpose.

¶6 Recently, in the matter of *In Re Hancock*, 719 A.2d 1053 (Pa.Super.1998), the question for review before our Court was the degree of proof necessary to find a person committed for mental evaluation, that is whether the evidence should be clear and convincing, or preponderant.

---

3. Although J.S.'s commitment period has expired, a live controversy still exists and we are able to review the issue at hand. *In Re Chiumento*, 455 Pa.Super. 376, 688 A.2d 217, 219–20 (1997).

4. We are cognizant that there exist various mechanisms to introduce an individual under the auspices of the Mental Health Procedures Act. We refer to the specific titles of the mental health officers and reviewers involved in this matter and do not attempt to cover all the means by which an individual may come into contact with the Act.

Our Court premised its finding under the Mental Health Procedures Act (MHPA), specifically § 7301, wherein we resolved that there should be no difference in the criteria or proof of evidence necessary to justify the institutionalization of persons involuntarily committed under the Act. We found in *Hancock* that there was a lack of uniform application throughout the MHPA as to the nature and weight of the evidence needed in order to commit someone who is severely mentally disabled, defined as one who poses a clear and present danger of harm to others or to himself. *See* 50 P.S. § 7301. However, as § 7303 lacked a provision regarding the degree of evidence needed, we found that the clear and convincing test, set forth in § 7304, should be applied with regard to § 7303 of the MHPA.

¶ 7    *Hancock* points out that on an appropriate occasion the judiciary may clarify the intended purpose of the legislation in order to establish the proper balance of equity and intent for the parties involved. Specifically, *Hancock* stated that:

> [c]onsideration of cases addressing omissions in legislative drafting requires the most critical and sensitive judicial analysis. It is not the role of the courts to "add provisions which the legislature has omitted unless the phrase is necessary to the construction of the statute." *Commonwealth v. Berryman*, 437 Pa.Super. 258, 649 A.2d 961, 965 (Pa.Super. [sic] 1994) *appeal denied*, 541 Pa. 632, 663 A.2d 685 (1995). Thus, in cases such as the one before this Court, a court might prefer to refrain from rendering a decision on the merits, choosing to leave such matters to the legislature.

> Sometimes, however, situations arise that requires this Court to address the practical ramifications of the application of the law as written and establish a clearly defined uniform rule in the absence of clarity by the legislature. *See id.* After all, "[w]e are to presume that the legislature did not intend a result

that is absurd or unreasonable." *Id.* at 966.

*Hancock, supra,* 719 A.2d at 1055.

¶ 8    The issue raised in the instant case before us is whether an application of the time constraint enunciated in § 7304, in which the Judge is given 48 hours to decide the matter, can logically be applied as a time to be adopted in § 7303 where a given time for the Judge's determinative review is not set forth. Where the period of hospitalization is twenty (20) days under § 7303, we see no logic in absence of legislative direction that a prompt judicial decision should not be made within 48 hours after the review hearing regarding the findings of the mental health Master, if not sooner. By setting this time test in § 7303 we see no disruption in the total view and endeavor sought by the legislature to fix a time for judicial review which can be fairly applied in the interest of the designated mental health agency and the patient. It is clearly as important under § 7303 that a judicial finding be made within 48 hours whether a patient should remain or be released as it is under the conditions of § 7304. Thus, as a result of our careful consideration of the significance of § 7303 of the MHPA and in the absence of a review determination by the Judge within 48 hours, we order J.S.'s § 7303 commitment vacated as well as the expungement of all records and documents related thereto or derived therefrom concerning the § 7303 commitment. *See In Re Woodside*, 699 A.2d 1293, 1299 (1997) (expungement is proper *only* for records derived improperly).

¶ 9    The Appellee's position that a timely judicial decision within 48 hours is not necessary because a § 7303 commitment hearing is an "informal conference" and thus less bound by evidentiary rules, including the potential admissibility of hearsay evidence, is not persuasive. It seems to us that this argument can be more convincingly made on behalf of the petitioner in asking for a time constraint for judicial review in order to more promptly

discard hearsay evidence and consider as it should the essential relevant facts. We are mindful of this Court's concerns in *Hancock* regarding § 7303 commitments:

> [c]onfinement for twenty days, as a civil commitment for any length of time, constitutes a "significant deprivation of liberty." Being confined for mental health treatment, even for *only* twenty days, produces a stigma that the individual must carry for the remainder of his life. Most importantly, as noted by this state's Supreme Court, "a person who is mistakenly committed to a mental institution might suffer serious psychological damage" as a result of the confinement.

*Hancock, supra,* 719 A.2d at 1057 (citations omitted).

¶ 10 Appellee seeks to justify the Judge's delay in reviewing J.S.'s § 7303 commitment fifteen (15) days after his review hearing on the ground that the petitioner failed to file a verification to the Petition for Review as required by Pa. R.C.P. 1024. We believe that Appellee's argument regarding the verification is the proverbial "red herring." Without commenting upon the validity of such a requirement, we are cognizant of the fact that the Trial Court in the instant matter gave J.S.'s counsel five (5) days from the date of the hearing to file a verification. The certified record indicates that J.S.'s verification was filed within four (4) days of the hearing, on October 20, 1997, and in compliance of the Trial Court's order. Moreover, the record of the review hearing indicates that the Trial Judge stated:

> [i]f that [the verification] is filed, I will decide that case on the merits as *promptly* as that is filed. If it is filed today, I will decide the case today; if it's filed tomorrow, I'll do the same thing, but I'll give you a total of five days to file the verification.

N.T. Petition for Review Hearing, 10/16/97, at 15 (emphasis supplied). Clearly, Appellee's argument regarding the verification issue is specious at best as indicated by the Trial Court's desire to rule *promptly* upon its receipt. Finally, as Appellee has given this Court nothing dispositive of the issue involved herein, we are compelled to vacate J.S.'s § 7303 commitment and expunge all records relating to said proceeding.

¶ 11 Order vacated; records expunged consistent with this Opinion. Superior Court Jurisdiction Relinquished.