Justice BAER files a Dissenting Statement in which Justice TODD joins.

Justice BAER, dissenting.

I dissent from the Court's *per curiam* order striking Robert Guzzardi from the primary ballot for the Republican Party nomination for the Office of Governor. Citing *In re Nomination of Paulmier*, 594 Pa. 433, 937 A.2d 364 (2007), the Court concludes that the Commonwealth Court erred by applying *nunc pro tunc* principles to Guzzardi's late filing of his statement of financial interests with the Ethics Commission. Unlike the instant case, however, this Court's decision in *Paulmier* did not involve a request for nunc pro tunc relief. Moreover, the Commonwealth Court has invoked equity to afford relief from otherwise fatal defects in a nomination petition where the candidate demonstrated a non-negligent reason for a late filing. *See In re Howells*, 20 A.3d 617 (Pa.Cmwlth.), aff'd *per curiam*, 611 Pa. 559, 28 A.3d 915 (2011). I would reach the same conclusion here because the Commonwealth Court conducted an evidentiary hearing and made findings of fact, which are supported by the record, establishing that Guzzardi was ready, willing, and able to file his statement of financial interests with the Ethics Commission, and only failed to do so because a Department of State employee told him that such filing was unnecessary.

Additionally, I disagree with the observation in the Court's *per curiam* order that "the Commonwealth Court erred in applying *nunc pro tunc* constructs to excuse what it perceived to be a non-negli-

gent failure...." Op. at 701. Respectfully, I do not view this case as involving a perception of non-negligent failure; rather, this case involves specific factual findings supported by evidence of record. I agree with the Commonwealth Court that what occurred here was a breakdown in the administrative process. To strike this candidate's name from the ballot is akin to denying candidates their right to appear on the ballot under circumstances where there was some accident or natural disaster preventing candidates from entering the filing office.

Accordingly, I dissent.

Justice TODD joins.

**In the Interest of W.A.**

**Appeal of W.A.**

Superior Court of Pennsylvania.

Submitted March 10, 2014.
Filed April 30, 2014.

David R. Crowley, Bellefonte, for appellant.

Daniel McGee, State College, for appellee.

BEFORE: PANELLA, OLSON, MUSMANNO, JJ.

OPINION BY PANELLA, J.

Appellant, W.A., appeals from the order entered on September 30, 2013, in the Court of Common Pleas of Centre County,

which involuntarily committed him to inpatient mental health treatment pursuant to Section 304 of the Mental Health Procedures Act ("MHPA"), 50 P.S. § 7101, *et seq.* We consider whether the trial court's failure to render a decision within the timeframe provided in Section 304 of the MHPA mandates discharge of the involuntarily committed inpatient. We hold it does not and affirm.

In May 1998, W.A. pled guilty to arson, simple assault and terroristic threats. W.A. is serving a sentence of five to 23 years' imprisonment and was committed for a psychiatric evaluation under Section 302 of the MHPA on September 3, 2013. W.A. was evaluated at the Mental Health Unit at the State Correction Institution at Rockview ("Rockview") on September 4, 2013. Following a psychiatric evaluation, Rockview filed a petition under Section 303 of the MHPA seeking an extension of involuntary treatment of up to 20 days. On September 12, 2013, W.A. was involuntarily committed, pursuant to Section 303 of the MHPA, to Rockview for a period of 20 days because of threatening and assaultive behavior toward his psychiatrist and a corrections officer.

On September 23, 2013, Dr. Carol Eidsvoog, the treating psychiatrist at Rockview, filed a petition pursuant to Section 304 of the MHPA, seeking to extend W.A.'s period of involuntary treatment for an additional 90 days. At the time the filing of the Section 304 petition, W.A. was still receiving treatment pursuant to the Section 303 commitment ordered on September 12, 2013. Mental Health Review Officer Sonja F. Napier, Esquire, held a hearing on Rockview's application on September 25, 2013. At the conclusion of the hearing, Hearing Officer Napier filed a report recommending that W.A.'s involuntary commitment continue.

On September 30, 2013, the trial court entered an order directing that W.A. be involuntarily committed at Rockview for up to 90 days. W.A. filed a petition for review of certification to involuntary inpatient mental health treatment, which the trial court denied. This appeal followed.

W.A. raises the following issue for our review:

WHETHER THE LOWER COURT WAS REQUIRED TO DISCHARGE PETITIONER FOLLOWING ITS FAILURE TO ABIDE BY ITS STATUTORY REQUIREMENT TO RENDER A DECISION WITHIN 48 HOURS OF THE CLOSE OF THE EVIDENCE?

Appellant's Brief, at 5.

This question presents an issue of law. As such, "our standard of review is *de novo* and our scope of review is plenary." *AAA Mid–Atlantic Ins. Co. v. Ryan*, —— Pa. ——, 84 A.3d 626, 631 (2014).

W.A. is not challenging the sufficiency of the evidence to support the order certifying him for involuntary inpatient mental health treatment. *See* Appellant's Brief, at 6. Rather, W.A. argues that the trial court erred in filing a commitment order more than 48 hours after the close of the evidentiary hearing in contravention of 50 P.S. § 7304(e)(7). Section 304 provides, in pertinent part:

**(e) Hearings of Petition for Court-order Involuntary Treatment.**—A hearing on a petition for court-ordered involuntary treatment shall be conducted according to the following:

. . .

(7) A decision shall be rendered within 48 hours after the close of evidence.

50 P.S. § 7304(e)(7).

■ Because the hearing before Mental Health Review Officer Napier concluded on September 25, 2013, which was a Wednesday, a strict interpretation of subsection (e) required the decision by the trial court to be filed by September 27, a Friday. Although the order was not filed timely, because of the intervening weekend, it was filed on Monday, September 30, the next business day.

W.A. contends that this technical violation requires that the commitment order be reversed and that he be discharged. This Court has categorically rejected a mechanical interpretation of the MHPA. *See In re S.L.W.*, 698 A.2d 90 (Pa.Super.1997).

In *In re S.L.W.*, a consolidated appeal, the panel considered a pair of challenges arguing that technical violations involving, among other things, delays in adhering to the timeframe of the MHPA, required vacating of the commitment orders. The panel rejected the arguments that advocated a mechanical application of the MHPA's statutory provisions. The panel explained that

[o]ne of the goals of the Mental Health Procedures Act is to protect the due process interests of the patient who loses his or her liberty by being committed to an institution. Protection of those interests requires fundamental fairness to the patient and respect for the patient's dignity and individuality. Achieving this standard requires common sense application of statutory provisions, not mechanical application. A distinction must be made between those standards that directly affect the due process and liberty interests of the patient and those that do not.

*Id.*, at 94. Moreover, the panel further instructed that "[i]n applying the [MHPA] we must take a balanced approach and remain mindful of the patient's due process and liberty interests, while at the same time permitting the mental health

system to provide proper treatment to those involuntarily committed to its care." *Id.*[1] (footnote omitted).

Here, W.A. has not identified how his due process rights or liberty interests were violated other than the late filing of the order by the trial court. Furthermore, we note that, at the time the Section 304 commitment order was entered, albeit after a one-weekend delay, W.A. was still receiving treatment pursuant to the Section 303, 20-day commitment order entered on September 12, 2013. W.A. suffers from bipolar disorder and mania and, as a result, poses a clear and present danger to himself and others. Thus, W.A. remains a severely mentally disabled individual in need of continued involuntary inpatient treatment. The lack of treatment could lead to serious physical debilitation or death.

■ The involuntary civil commitment of mentally ill persons constitutes a deprivation of liberty interests, and to justify this deprivation the procedures must satisfy due process protections. *See* 50 P.S. § 7102 ("The provisions of this act shall be interpreted in conformity with the principles of due process to make voluntary and involuntary treatment available where the need is great and its absence could result in serious harm to the mentally ill person or to others."). *See also In re R.D.,* 739 A.2d 548, 554 (Pa.Super.1999). However,

[d]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. [D]ue process is flexible and calls for such procedural protections as the particular situation demands.

*Id.* (quoting *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). Adherence to a strict enforcement of the 48–hour limitation would have ignored the existing Section 303 extended treatment and deprived W.A. of necessary care.

Accordingly, we refuse to vacate W.A.'s Section 304 commitment on the technical grounds he asserts as it is evident that W.A.'s due process and liberty interests were not affected by the short delay and his continued needed commitment.

Order affirmed. Jurisdiction relinquished.

OLSON, J. concurs in the result.

---

1. W.A. relies on *In re J.S.,* 739 A.2d 1068 (Pa.Super.1999), to argue that the failure to comply with the timeframe mandates the reversal of his commitment order and his discharge. In *In re J.S.,* the panel took the 48–hour timeframe for the trial court to render a decision in Section 304 and grafted it onto Section 303, which failed to provide a timeframe for a judicial determination. *See id.,* at 1070. The panel, without citing *In re S.L.W.* and its directive to utilize a common sense, non-mechanical approach in construing provisions of the MHPA, then held that the failure of the trial court to render a decision in

that 48–hour period required reversal of the commitment order. The establishment of this bright line rule was in direct conflict with a prior case and we decline to follow it.

Further, the bright line rule ignores the difficult reality presented in these cases. The "balanced approach" articulated in *In re S.L.W.,* which requires the MHPA to be construed in a common sense, non-mechanical manner is better suited to protect the due process rights of the involuntarily committed person and ensure that the mental health professionals provide proper treatment to those in their care.