J. A26032/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF:  P.N.       :    IN THE SUPERIOR COURT OF
                                   :        PENNSYLVANIA

APPEAL OF:  P.N.,             :

                                   :        No. 683 MDA 2015
             Appellant     :


Appeal from the Order Entered March 18, 2015,
in the Court of Common Pleas of Centre County
Civil Division at No. 2015-718


BEFORE:  FORD ELLIOTT, P.J.E., WECHT AND PLATT,* JJ.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED OCTOBER 30, 2015**

Appellant, P.N.,[1] appeals from the trial court's order denying his petition for review of certification for involuntary inpatient mental health treatment.  We affirm.

On February 19, 2015, a warrant was issued against appellant to compel his examination and need for psychiatric treatment under the Mental Health Procedures Act ("MHPA").[2]  An application to extend his involuntary treatment for a period not to exceed 20 days was filed with the trial court on February 20, 2015.  After a hearing on February 23, 2015, appellant was

---

* Retired Senior Judge assigned to the Superior Court.

[1] Mindful of the sensitive nature of the case, we have amended the case caption to utilize only the initials of appellant.

[2] 50 P.S. §§ 7101-7503.

committed for a period not to exceed 20 days.[3]  On March 12, 2015, an application to extend his involuntary treatment for a period not to exceed 90 days was filed.  Following a hearing on March 13, 2015, the Mental Health Review Officer ("MHRO") filed a report with the trial court recommending the extension of the involuntary treatment.

On March 18, 2015, the trial court entered an order committing appellant to inpatient treatment at SCI-Rockview Mental Health Unit or other facility approved by his treatment team and the Pennsylvania Department of Corrections for a period not to exceed 90 days.  (Docket #11.)  Appellant timely sought a petition for review of his certification for involuntary treatment.  The petition was denied on March 27, 2015, prompting the instant appeal.[4]  Appellant was ordered to file a concise statement of errors complained of on appeal, and he timely complied.

---

[3] According to the February 23, 2015 Report of the Mental Health Review Officer, appellant is serving a sentence of 15 years to 40 years' incarceration after having been convicted of third degree murder on December 16, 2011. While serving his sentence, appellant charged another inmate resulting in a broken arm.  Appellant has a diagnosis of schizophrenia and post-traumatic stress disorder; appellant exhibits paranoia; appellant indicated that he sometimes hears voices; appellant has been prescribed benedryl and prolixin and has been non-compliant with the medication and has shown no improvement.  The Report also found appellant continues to be a danger to others and that if treatment is not afforded him under the MHPA within 30 days, he would likely injure or kill others.  (Docket #2).

[4] Although appellant's period of commitment has expired, this appeal is not moot because involuntary commitment affects an important liberty interest, and because by their nature, involuntary commitment orders expire before appellate review is possible.  **See In re Woodside**, 699 A.2d 1293, 1296 (Pa.Super. 1997).

Appellant raises one issue for our consideration:

> I. WHETHER THE LOWER COURT WAS REQUIRED TO DISCHARGE [APPELLANT] FOLLOWING ITS FAILURE TO ABIDE BY ITS STATUTORY REQUIREMENT TO RENDER A DECISION WITHIN 48 HOURS OF THE CLOSE OF THE EVIDENCE?

Appellant's brief at 4.

This question presents an issue of law, and as such, "our standard of review is *de novo* and our scope of review is plenary." *AAA Mid-Atlantic Ins. Co. v. Ryan*, 84 A.3d 626, 631 (Pa. 2014). Appellant is not challenging the sufficiency of the evidence to support the order certifying him for involuntary inpatient mental health treatment. Rather, appellant argues the trial court erred in filing a commitment order more than 48 hours after the close of the evidentiary hearing in contravention of 50 P.S. § 7304(e)(7).

We note that the MHPA, 50 P.S. § 7101 *et seq.*, provides:

> **§ 7304.  Court-ordered involuntary treatment not to exceed ninety days**
>
> **(a)  Persons for Whom Application May be Made.**--(1) A person who is severely mentally disabled and in need of treatment, . . . may be made subject to court-ordered involuntary treatment upon a determination of clear and present danger under section 301(b)(1) (serious bodily harm to others), or section 301(b)(2)(i) (inability to care for himself, creating a danger of death or serious harm to himself), or 301(b)(2)(ii)

(attempted suicide), or 301(b)(2)(iii) (self-mutilation).

(2) Where a petition is filed for a person already subject to involuntary treatment, it shall be sufficient to represent, and upon hearing to reestablish, that the conduct originally required by section 301 in fact occurred, and that his condition continues to evidence a clear and present danger to himself or others. In such event, it shall not be necessary to show the reoccurrence of dangerous conduct, either harmful or debilitating, within the past 30 days.

**(b) Procedures for Initiating Court-ordered Involuntary Treatment for Persons Already Subject to Involuntary Treatment.**--(1) Petition for court-ordered involuntary treatment for persons already subject to treatment under sections 303, 304 and 305 may be made by the county administrator or the director of the facility to the court of common pleas.

. . . .

(5) Treatment shall be permitted to be maintained pending the determination of the petition.

. . . .

**(e) Hearings of Petition for Court-order Involuntary Treatment.--**A hearing on a petition for court-ordered involuntary

> treatment shall be conducted according to the following:
>
> . . . .
>
> > (7)    A decision shall be rendered within 48 hours after the close of evidence.

50 P.S. § 7304 (a)(2), (b)(5), and (e)(7) (internal footnotes omitted).

In rebutting appellant's claim of error, the trial court explained:

> Pursuant to 50 Pa.C.S.A. §7304(e)(7), a decision on a petition for court-ordered involuntary treatment must be rendered within 48 hours after the close of evidence. Appellant's hearing before the Mental Health Review Officer took place on March 13, 2015, a Friday. On March 18, 2015, a Wednesday, this Court entered an order regarding Appellant's commitment.
>
> While a strict interpretation of subsection (e) requires this Court's decision to have been filed by March 17, 2015, a Tuesday, the Honorable Superior Court "has categorically rejected a mechanical interpretation of the MHPA." *In re: W.A.*, 91 A.3d 702, 704 (Pa.Super. 2014), citing *In re S.L.W.*, 698 A.2d 90 (Pa.Super. 1997). The Court explained that
>
> > [o]ne of the goals of the Mental Health Procedures Act is to protect the due process interests of the patient who loses his or her liberty by being committed to an institution. Protection of those interests requires fundamental fairness to the patient and respect for the patient's dignity and individuality. Achieving this standard requires common sense application of statutory provisions, not mechanical application. A distinction must be made between those standards that directly affect the due process and

> liberty interests of the patient and those that do not.
>
> Due process "is not a technical conception with a fixed content unrelated to time, place, and circumstances." ***Id.*** Rather, "due process is flexible and calls for such procedural protections as the particular situation demands." ***Id.*** The Mental Health Procedures Act must be construed in a common-sense, non-mechanical manner so as to protect the due process rights of the committee and to ensure mental health professionals can provide proper treatment to those in their care. ***See In re S.L.W.***, 698 A.2d 90 (Pa.Super. 1997). Appellant's due process rights or liberty interests were not violated by the filing of the order one day past the 48-hour deadline under subsection (e). Adherence to a strict enforcement of the 48-hour time limit would have deprived Appellant of necessary care.

Trial court opinion, 5/11/15 at 2. Based on our review of the record and applicable jurisprudence, we agree with the trial court.

Appellant cites ***In re J.S.***, 739 A.2d 1068 (Pa.Super. 1999), for its holding that the failure to timely file the commitment order requires the order be vacated. (Appellant's brief at 11). Appellant points out the trial court acknowledged that the order was not filed within the time limits prescribed by the MHPA. Appellant goes on to argue the trial court's reliance on ***In re S.L.W.***, ***supra***, and ***In the Interest of W.A.***, ***supra***, to excuse the delay was in error. We disagree.

In ***In re J.S.***, the panel was addressing § 7303 and not § 7304, which is the relevant section in the case ***sub judice***. The ***In re J.S.*** court laid out the issue as follows:

> The quandary that exists here for our question is posed with reference to § 7303 as to the time within which a judicial determination must be made as to the detention or release of a mental patient. The Mental Health Procedures Act (MHPA) provides that under § 7304, the Judge or the mental health review officer must decide within forty-eight (48) hours of the Master's decision whether to continue the patient's stay in the hospital or to release him or her from the hospital. However, § 7303 has no time specifically set forth within which a judicial review must be made as to the time of stay or release. Since J.S. was committed under the twenty (20) day stay provision, the question here is whether there is a need to determine what time is fair within which a judge must make a review determination of the patient's status, either that he be detained or otherwise released, especially when his twenty (20) day stay is such a short term.

*In re J.S.*, 739 A.2d at 1069. The *J.S.* court went on to apply the 48-hour time frame of § 7304; specifically holding,

> we see no logic in absence of legislative direction that a prompt judicial decision should not be made within 48 hours after the review hearing regarding the findings of the mental health Master, if not sooner. By setting this time test in § 7303 we see no disruption in the total view and endeavor sought by the legislature to fix a time for judicial review which can be fairly applied in the interest of the designated mental health agency and the patient.

*Id.* at 1070.

Fifteen years later in *In the Interest of W.A.*, a panel of this court addressed the *In re J.S.* decision. The specific argument in *In the Interest of W.A.* is the same argument posed instantly; *i.e.*, whether the

failure to comply with the 48-hour timeframe of § 7304 required the reversal

of appellant's commitment.  The court explained:

> **W.A.** relies on **In re J.S.**, 739 A.2d 1068 (Pa.Super. 1999), to argue that the failure to comply with the timeframe mandates the reversal of his commitment order and his discharge.  In **In re J.S.**, the panel took the 48–hour timeframe for the trial court to render a decision in Section 304 and grafted it onto Section 303, which failed to provide a timeframe for a judicial determination.  **See id.**, at 1070.  The panel, without citing **In re S.L.W.** and its directive to utilize a common sense, non-mechanical approach in construing provisions of the MHPA, then held that the failure of the trial court to render a decision in that 48–hour period required reversal of the commitment order.  The establishment of this bright line rule was in direct conflict with a prior case and we decline to follow it.
>
>> Further, the bright line rule ignores the difficult reality presented in these cases.  The "balanced approach" articulated in **In re S.L.W.**, which requires the MHPA to be construed in a common sense, non-mechanical manner is better suited to protect the due process rights of the involuntarily committed person and ensure that the mental health professionals provide proper treatment to those in their care.

**In the Interest of W.A.**, 91 A.3d at 705.

Here, we consider that the filing delay was short, one day,[5] and the MHPA provides that "[t]reatment shall be permitted to be maintained pending the determination of the petition." 50 P.S. § 7304(b)(5). Moreover, we discern no prejudice to appellant; as reflected by the record, we are mindful that appellant has a need for continued involuntary psychiatric treatment without which appellant poses a risk of harm to others and himself.[6] *See In re R.D.*, 739 A.2d 548, 555 (Pa.Super. 1999), citing

---

[5] Appellant points out that the record closed at 12:30 p.m. on Friday, March 13, 2015, and that an order committing appellant was statutorily required to have been filed by 12:30 p.m. on Sunday March 15, 2015. We disagree. According to Section 1908 of the Rules of Construction, **Computation of time**:

> When any period of time is referred to in any statute, such period in all cases, except as otherwise provided in section 1909 of this title (relating to publication for successive weeks) and section 1910 of this title (relating to computation of months) shall be so computed as to exclude the first and include the last day of such period. Whenever the last day of any such period shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation.

1 Pa.C.S.A. § 1908. Based on the above, the weekend of March 14 and 15, 2015, is excluded from the calculation. Consequently, the order was due Tuesday, March 17, 2015.

[6] Dr. Carol Eidsvoog, appellant's treating psychiatrist, testified appellant suffers from schizophrenia and intellectual disability. (Notes of testimony, 3/13/15 at 7.) Dr. Eidsvoog described appellant as a danger to himself and others. (*Id.* at 7-8.) Dr. Eidsvoog stated she wanted to keep appellant a bit longer so she could make some medication adjustments, and get him to the point where he could participate in groups and therapy and gain some insight into his illness. (*Id.* at 10.) Additionally, she was concerned with

MHPA, § 102 ("The legislature's purpose in enacting the Mental Health Procedures Act was 'to assure the availability of adequate treatment to persons who are mentally ill' and 'to make voluntary and involuntary treatment available where the need is great and its absence could result in serious harm to the mentally ill person or to others.'"). This court explained:

> We must be mindful that the fundamental purpose of any [due process procedural] protections we apply is to minimize the risk of erroneous decisions [and that] [t]o discern the demands of due process, we must adjudge the necessity of the protection sought in view of the nature and purpose of the underlying deprivation and the potential consequences in the absence of that protection.

*R.D.*, *supra*, at 554, citing *Addington v. Texas*, 441 U.S. 418, 425-427 (1979). Accordingly, applying the rationale espoused in the foregoing authorities, we affirm the trial court's Section 304 commitment order. *See In re Interest of W.A.*, *supra* at 705 ("We refuse to vacate [appellant's] Section 304 commitment on the technical grounds he asserts as it is evident

---

appellant's claim that he was going to stop his medication the minute he is out of the unit. (*Id.*)

that [appellant's] due process and liberty interests were not affected by the short delay and his continued needed commitment.").

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/30/2015